UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLAWLESS STYLE LLC,<br><br>        Plaintiff,<br><br> -against-<br><br>SAADIA GROUP LLC,<br><br>        Defendant. | Civ. No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

  Plaintiff Flawless Style LLC ("Licensor" or "Plaintiff"), a corporation organized under the laws of the state of Delaware, hereby brings this Complaint against Defendant Saadia Group LLC ("Saadia" or "Defendant") and alleges as follows:

## NATURE OF ACTION

  1. This action stems from Saadia's flagrant and material breach of a License and Spokesperson Agreement (the "Agreement") between it and Flawless Style LLC, relating to Saadia's manufacture and sale of merchandise using the name, image, likeness, and biography of internationally renowned actress, activist, and author Gabrielle Monique Union-Wade, p/k/a Gabrielle Union.

  2. Through the Agreement, in exchange for a license to use Ms. Union's name, image, voice, and likeness in connection with approved brands, products, and services, Saadia agreed to pay Licensor substantial endorsement compensation and guaranteed royalties during the duration of the Agreement, and to reimburse Licensor for certain professional services rendered in connection with the Agreement.

3. Licensor and Ms. Union upheld their end of the bargain and participated in the curation and promotion of a fashion line launched through Saadia's brands New York & Company, Lord & Taylor, and Fashion to Figure.

4. But, starting in May 2022, Saadia ceased **_all_** payments to Licensor and certain third parties in connection with the Agreement and has failed to pay Licensor guaranteed royalties.

5. Saadia failed to make these promised payments to Licensor despite continuing to offer products using Ms. Union's name, image, voice, and likeness for sale through Saadia's brands.

6. After repeated unsuccessful efforts to obtain payment from Saadia, on February 9, 2023, Licensor sent Saadia a letter, setting forth Saadia's failure to make the required payments and outlining its material breaches of the Agreement. Saadia failed to cure its breaches.

7. On March 7, 2023, due to Saadia's repeated failure to make payments required under the Agreement, Licensor terminated the Agreement and revoked Saadia's license to continue offering for sale items using Ms. Union's name and likeness.

8. Despite the termination of the Agreement, Saadia continues to offer these goods for sale—improperly continuing to use the license and enriching itself without conferring **_any_** benefit to Licensor in exchange.

9. Licensor now brings this action to enforce its rights under the Agreement, to stop Saadia's continued unlawful use of its property, and to receive the benefit of its bargain with Saadia.

## THE PARTIES

10. Plaintiff Flawless Style LLC is a limited liability company organized under the laws of Delaware with a principal place of business at 28720 Roadside Dr., Suite 151, Agoura Hills,

California, 91301.  Plaintiff is wholly owned by Gabrielle Monique Union-Wade ("Ms. Union"), a natural person residing in the state of California.

11. Defendant Saadia Group LLC is a corporation organized under the laws of New York with a principal place of business at 275 Madison Avenue, 3rd Floor, New York, NY 10016.

## JURISDICTION AND VENUE

12. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. This Court has general personal jurisdiction over Defendant pursuant to CPLR § 301 in that Defendant is organized under the laws of New York and has a principal place of business in New York County.  Defendant also regularly conducts business in New York, including by contracting to provide goods and/or services in New York.  Moreover, Defendant consented to personal jurisdiction in this Court pursuant to the Agreement.  (Agreement § 21.)

14. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), in that the claims arise in this judicial district, where Defendant conducts business.  The Agreement also identifies "the state and federal courts located in the City and County of New York" as the exclusive forum for "all disputes brought by either party relating in whole or part to [the] Agreement." (*Id.*)

## FACTUAL ALLEGATIONS

A.   **Applicable Provisions of the Agreement**

   *1.   The Fundamental Bargain*

15. On or about June 1, 2021, Licensor and Saadia entered into the Agreement.

16. Pursuant to the Agreement, Licensor granted Saadia a license to use (a) the "name, image, voice, likeness and biography" of Ms. Union in connection with the "branding,

3

manufacture, promotion, marking, advertising, offering for sale and/or sale" of certain merchandise, and (b) the trademark GABRIELLE UNION (the "License"). (Agreement at 1.)

17. The essential object and purpose of the Agreement was Saadia's right to use the License to manufacture a fashion line/fashion lines through its brands New York & Company, Fashion to Figure, and Lord & Taylor. (*Id.* § 2.)

18. Prior to the Agreement, the name and trademark GABRIELLE UNION was utilized on and in connection with a successful fashion line previously offered at New York & Company, then under different management and ownership.

19. The Agreement contemplated that Saadia would manufacture and promote women's apparel, swimwear, bedding, home goods, furniture and certain accessory merchandise designed by or on behalf of Saadia and approved by Licensor under the License (the "Collection Merchandise"). (*Id.* §2 (b).)

20. The Agreement was contemplated to last for an initial term through November 30, 2024. (*Id.* § 1(a).)

    2. *Payments to Plaintiff Promised by Saadia*

21. In exchange for its use of the License and related services to be performed by Licensor and/or Ms. Union, Saadia promised multiple forms of consideration to Licensor, as well as reimbursement of expenses incurred in connection with Licensor and Ms. Union's services under the Agreement.

22. Saadia promised to pay Licensor for its work producing promotional materials, providing design services, and acting as a brand ambassador for the Collection Merchandise (the "Endorsement Compensation"). (*Id.* § 8(a)(i)(A(1).)

23. Licensor was to be paid a portion of the Endorsement Compensation upon its entry into the Agreement. Saadia was to make a second payment on November 1, 2021, and the

remaining amount of the first year's Endorsement Compensation was to be distributed in four payments, due on February 28, 2022, May 31, 2022, August 31, 2022, and November 30, 2022 (each date being the close of a "Contract Quarter"). (*Id.* § 8(b)(i).)

24. Saadia also promised to pay Licensor royalties based upon Saadia's proceeds from the sale of the Collection Merchandise, as well as certain minimum guaranteed royalty ("Guaranteed Royalty") payments for each year of the Agreement, to be paid following the close of each Contract Quarter. (*Id.* § 8(a)(ii).)

### 3. *Other Payments Promised by Saadia*

25. In addition to the Endorsement Compensation and Guaranteed Royalty payments, Saadia agreed to hire and pay directly a hair stylist, make-up artist, and manicurist of Ms. Union's choice (collectively the "Personnel") in connection with Ms. Union's production and public relations work under the Agreement. (*Id.* § 4(j).)

26. Saadia additionally promised to hire and directly pay Licensor's creative consultant, Thomas Kikis ("Creative Consultant"), in connection with services to be provided under the Agreement. (*Id.* § 4(k).)

27. Further still, Saadia agreed to pay Licensor's social media team for its work providing certain social media services set forth in the Agreement, such amounts payable in installments each Contract Quarter. (*Id.* § 4(s).)

28. Last, Saadia agreed to enter into a separate contract with Ms. Union's public relations firm (the "Licensor PR Firm") for the provision of public relations services related to the Collection Merchandise and Ms. Union's services under the Agreement. (*Id.* § 4(l).)

      *4.*   <u>*The Agreement's Termination Provisions*</u>

  29.  The Agreement additionally outlined the parties' rights and obligations in the event of breach. Specifically, in the event that either party materially breached the Agreement, the non-breaching party was to provide written notice of the breach. (*Id.* § 18(a).)

  30.  In the event such breach was not cured within fifteen (15) business days of receipt of the notice, the non-breaching party was entitled to terminate the Agreement. (*Id.*)

  31.  In the event that Saadia was the breaching party, it was required to "immediately cease and cause the cessation of all of its activities (and those of its affiliates) respecting the [Collection Merchandise]." (*Id*. § 18(b)(i).) In such an event, Saadia was expressly precluded from continuing the sale of any Collection Merchandise, including any merchandise it presently had on hand or in production. (*See id.* §§ 18(b)(i)-(iv).)

  32.  In the specific event that Saadia breached its obligation to make the Guaranteed Royalty payments promised to Licensor and Licensor exercised its right to terminate the Agreement, Licensor was entitled to recover not only the unpaid amounts, but also "the entire unpaid amount of the Guaranteed Royalty payable during the twelve (12) month period following the date of such termination" which was "due and payable to Licensor on the date of such termination of this Agreement." (*Id.* § 8(a)(ii).)

  33.  In addition to the above, the Agreement provides that any amounts unpaid by Saadia bear interest "at the lesser of 12% per annum or the maximum rate allowed by law, computed form the original due date until paid." (*Id.* § 8(e).)

  34.  Last, the parties recognized in the Agreement that Licensor's services and rights provided to Saadia were "special, unique, unusual, extraordinary and of an intellectual character."

### B.     Licensor's Performance and Saadia's Breach

*1.     Licensor Provides Services to Saadia*

35.     In the period following the parties' entry into the Agreement, Licensor and Ms. Union took great effort to perform their obligations under the Agreement. Each was involved in the curation, design, and promotion of the Collection Merchandise.

36.     In connection with this work, Ms. Union, the Personnel, the Creative Consultant, the social media team, and Licensor's PR firm each expended significant effort and resources in furtherance of the material aim of the Agreement—the creation and promotion of a Gabrielle Union branded fashion collection to be sold at New York & Co., Lord & Taylor, and Fashion to Figure.

37.     The fashion line launched on September 23, 2021, and Jack Saadia, principal and co-founder of Saadia, noted that customers had asked for the return of the Gabrielle Union fashion line.[1]

38.     Ms. Union promoted the fashion line through social media, and the campaign received coverage from the press.

*2.     Saadia Halts Payments While Continuing to Sell the Collection*

39.     Despite these efforts, not long after the Collection Merchandise was offered for sale, Saadia ceased making payments to Licensor.

40.     Saadia failed to make its quarterly payment of the Endorsement Compensation for the Contract Quarter ending in May 2022, and since that date has not made any additional payments of Endorsement Compensation to Licensor.

---

[1] https://www.bizjournals.com/bizwomen/news/latest-news/2021/09/gabrielle-union.html?page=all, accessed on March 20, 2023.

41. Saadia similarly has failed to make its quarterly Guaranteed Royalty payments. Saadia did not make a Guaranteed Royalty payment for the Contract Quarter ending in May 2022, and since that date similarly has not made any additional Guaranteed Royalty Payments to Licensor.

42. In addition to the above, Saadia materially breached the Agreement by failing to make promised payments to each of the Personnel, the Creative Consultant, and the social media team for their work in connection with the Collection Merchandise.

43. Further still, on information and belief, Saadia has failed to timely pay Licensor's PR firm for its work in promoting the Collection Merchandise.

44. Throughout this period, despite failing to make payment to Licensor, Saadia continued the promotion and sale of Collection Merchandise which makes use of the License.

45. As of the date of this Complaint, New York & Company continues to prominently feature Collection Merchandise for sale on its website, including a link to the "GABRIELLE UNION" collection as a top-level menu item on its front page near "SHOES" and "ACCESSORIES."[2]



---

[2] https://www.nyandcompany.com/ - retrieved on March 20, 2023.

46. "Gabrielle Union" is similarly listed as a "featured brand" on the Lord & Taylor website for the categories "clothing" and "dresses."[3]



C. **The Termination of the Agreement**

47. In light of Saadia's repeated failure to make payments required under the Agreement, on February 9, 2023, Licensor sent Saadia a letter outlining Saadia's multiple material breaches of the Agreement, and noting that unless such breaches were cured within fifteen (15) business days, Licensor would be entitled to terminate the Agreement.

48. Saadia failed to make payment or otherwise formally respond to the February 9, 2023 letter. On March 7, 2023, Licensor provided Saadia a formal notice through which it terminated the Agreement, and demanded that Saadia stop its sale of the Collection Merchandise.

---

[3] https://www.lordantaylor.com/ - retrieved on March 20, 2023.

49. To date, Saadia continues to sell Collection Merchandise in express contradiction of the terms of the Agreement, and has not paid any of the past-due amounts owed to Licensor.

50. Licensor now brings this action to stop Saadia's further improper exploitation of Licensed material, and to seek fulfillment of Saadia's obligations under the Agreement.

## FIRST CAUSE OF ACTION
### (Breach of Contract – Guaranteed Royalties)

51. Licensor repeats and realleges the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

52. Licensor and Saadia entered into a legally binding and enforceable contract (the Agreement) on June 1, 2021.

53. Licensor has fully complied with all of its obligations under the Agreement.

54. As set forth above, pursuant to Section 8(a)(ii) of the Agreement, Saadia was required to make certain Guaranteed Royalty payments to Licensor.

55. Saadia failed to make the required Guaranteed Royalty payments for each of the Contract Quarters ending on May 31, 2022, August 31, 2022, November 30, 2022, and February 28, 2023.

56. By failing to make the required Guaranteed Royalty payments, Saadia materially breached the Agreement, thus injuring Licensor.

57. Because Saadia has failed to make Guaranteed Royalty payments in breach of the Agreement, Saadia is required to pay the entire amount of Guaranteed Royalty payments for the period of twelve (12) months following the date of the termination, in addition to the past due Guaranteed Royalty amounts.

58. By reason of the foregoing, Saadia is liable to Licensor in an amount to be determined at trial but in no event less than $1.6 million, plus applicable interest.

## SECOND CAUSE OF ACTION
**(Breach of Contract – Endorsement Compensation)**

59. Licensor repeats and realleges the allegations contained in paragraphs 1 through 58 as if fully set forth herein.

60. Licensor and Saadia entered into a legally binding and enforceable contract (the Agreement) on June 1, 2021.

61. Licensor has fully complied with all of its obligations under the Agreement.

62. As set forth above, pursuant to Section 8(a)(i) of the Agreement, Saadia was required to make certain Endorsement Compensation payments to Licensor.

63. Saadia failed to make the required Endorsement Compensation payments for each of the Contract Quarters ending on May 31, 2022, August 31, 2022, and November 30, 2022.

64. By failing to make the required Guaranteed Royalty payments, Saadia materially breached the Agreement, thus injuring Licensor.

65. By reason of the foregoing, Saadia is liable to Licensor in an amount to be determined at trial but in no event less than $180,000.00, plus applicable interest.

## THIRD CAUSE OF ACTION
**(Breach of Contract – Other Failed Payments)**

66. Licensor repeats and realleges the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

67. Licensor and Saadia entered into a legally binding and enforceable contract (the Agreement) on June 1, 2021.

68. Licensor has fully complied with all of its obligations under the Agreement.

69. As set forth above, pursuant to Section 4(j) of the Agreement, Saadia agreed to hire and pay the Personnel to perform hair stylist, make-up artist, and manicurist services in connection

with work contemplated in the Agreement.

70. Additionally, pursuant to Section 4(k) of the Agreement, Saadia promised to hire and directly pay Licensor's Creative Consultant, Thomas Kikis, in connection with services to be provided under the Agreement.

71. Further still, pursuant to Section 4(s) of the Agreement, Saadia agreed to pay Licensor's social media team for its work providing certain social media services set forth in the Agreement.

72. Saadia failed to pay invoices from the Personnel for their work in connection with the Agreement.

73. Moreover, Saadia failed to make certain payments to the Creative Consultant under the Agreement.

74. Saadia additionally failed to make the required payments to Licensor's social media team for each of the Contract Quarters ending on May 31, 2022, August 31, 2022, and November 30, 2022.

75. On information and belief, the aggregate total outstanding amount due to the Personnel, the Creative Consultant and to Licensor's social media team is approximately $80,000.

76. By reason of the foregoing, Saadia breached its obligation to Licensor to pay these third-parties for their services.

77. Saadia has no justification to avoid performance of its obligation under Section 4 of the Agreement to pay these third parties for their services.

78. On information and belief, it is within Saadia's power to perform its obligation to pay the third parties for their services under the Agreement, but Saadia has voluntarily chosen not to do so.

79. Licensor has no remedy at law for Saadia's failure to pay the third parties as required under the Agreement.

80. By reason of the foregoing, Saadia should be directed by an order of specific performance to pay the outstanding amounts due and owing to the Personnel, the Creative Consultant, and Licensor's social media team.

## FOURTH CAUSE OF ACTION
(Injunction)

81. Licensor repeats and realleges the allegations contained in paragraphs 1 through 80 as if fully set forth herein.

82. Licensor terminated the Agreement on March 7, 2023.

83. As a result of Licensor's termination, Saadia no longer has the right to sell, manufacture, develop or distribute any Collection Merchandise, or to use the trademark GABRIELLE UNION.

84. As of the date of this Complaint, Saadia continues to improperly offer Collection Merchandise for sale, and continues to use Licensed material, including the trademark GABRIELLE UNION.

85. Licensor is and will be irreparably harmed absent an injunction because (a) money damages are inadequate to compensate Licensor for the ongoing use of its brand, which Saadia acknowledged was special, unique, unusual, extraordinary and of an intellectual character, and (b) Licensor risks the loss of goodwill due to Saadia's continued and unauthorized use of its License.

86. The balance of hardships favors the granting of an injunction. The hardship to Licensor absent the grant of the injunction is monumental. Absent an injunction, Saadia could seriously impair, or even destroy, the value of Ms. Union's brand and trademark. On the other

hand, the grant of an injunction barring Saadia from continuing to offer Collection Materials for sale or from otherwise using the License will present little hardship to Saadia.

87. The public interest would not be disserved by the injunction because the public has a compelling interest in the protection of trademarks and in the avoidance of customer confusion posed by the unlicensed use of Licensor's property.

## **JURY DEMAND**

88. Licensor repeats and realleges the allegations contain in paragraphs 1 through 87 as if fully set forth herein.

89. Licensor hereby demands a jury trial on all claims so triable.

**WHEREFORE**, Plaintiff demands judgment as follows:

a) on the First Cause of Action, an award of Plaintiff's damages in an amount to be determined at trial, but in no event less than $1,600,000, plus interest; and

b) on the Second Cause of Action, an award of Plaintiff's damages in an amount to be determined at trial, but in no event less than $180,000.00, plus interest; and

c) on the Third Cause of Action, an order directing specific performance of Saadia's obligation to make payments to the Personnel, the Creative Consultant, and the social media team in accordance with the Agreement; and

d) on the Fourth Cause of Action, a permanent injunction barring Defendant from further use of licensed material, including the trademark GABRIELLE UNION; and

e) such other and further relief as is just and proper.

\*     \*     \*

Dated: New York, New York
       March 20, 2023

                                          PRYOR CASHMAN LLP

                                          By: /s/ Matthew S. Barkan
                                               Brad D. Rose, Esq.
                                               Matthew S. Barkan, Esq.
                                          7 Times Square
                                          New York, New York  10036-6569
                                          (212) 421-4100
                                          *Attorneys for Plaintiff Flawless Style LLC*