UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLAWLESS STYLE LLC, and FLORIDAHUSKER LLC,<br><br>         Plaintiffs,<br><br> -against-<br><br>SAADIA GROUP LLC,<br><br>         Defendant. | No. 1:23-cv-2354-JHR-JW<br><br>Hon. Jennifer H. Rearden<br><br>**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

## FINDINGS OF FACT

1.  Ms. Gabrielle Monique Union-Wade ("Ms. Union") is a noted actress, author, philanthropist, and activist. She appeared and starred in multiple television series and films including "Love & Basketball" and "Bring It On." (ECF No. 21, ¶¶ 4-7).

2.  Ms. Union is a New York Times bestselling author of the book "We're Going to Need More Wine: Stories That Are Funny, Complicated and True." (*Id.* ¶ 9.) She has also written the children's series "Shady Baby." (*Id.*)

3.  Ms. Union is also committed to philanthropic and advocacy work. She writes and speaks publicly on the topics of racial justice, sexual assault and LGBTQ issues. She is also an ambassador for the Susan G. Komen foundation. (*Id.* ¶ 8.)

4.  Plaintiff FloridaHusker LLC ("Husker") is a limited liability company formed under the laws of Delaware with a principle place of business in Agoura Hills, California. (ECF No. 11, ¶ 11.)

5.  Husker owns the registered trademark GABRIELLE UNION, as registered under U.S. Reg. No. 6,713,926 (for use of GABRIELLE UNION in connection with clothing, under

shirts, night shirts, wraps, jackets, and more) and U.S. Reg. No. 6,080,359 for use in dresses, rompers, tops, and more (the "Ms. Union's Mark").  (ECF No. 21, ¶ 11; ECF No. 11-1.)

6. Plaintiff Flawless Style LLC is a limited liability company formed under the laws of California with a principle place of business in Agoura Hills, California.  (ECF No. 11, ¶ 12.)

7. Flawless is an entity through which Ms. Union commercially exploits her name and brand, curated over the years through Ms. Union's talent and hard work.  (ECF No. 21, ¶¶ 16-17.)

8. Both Husker and Flawless are wholly-owned by Ms. Union.  (*Id.* ¶¶ 11, 16).  The commercial activities of both entities are carried out at her direction and for her benefit.

9. Since 2017, Ms. Union has been using her name and Mark in connection with a clothing line that was sold at Lord & Taylor.  (*Id.* ¶ 12.)

10. On June 1, 2021, Ms. Union, acting through Flawless as "Licensor", entered into a certain License and Spokesperson Agreement ("Agreement") with Defendant Saadia Group LLC ("Saadia").  (ECF No. 21, ¶ 16; ECF No. 19, ¶ 5; ECF No. 19-1.)

11. Under the Agreement, Licensor granted Saadia an exclusive license to use (a) the "name, image, voice, likeness and biography" of Ms. Union in connection with the "branding, manufacture, promotion, marketing, advertising, offering for sale and/or sale" of certain merchandise and (b) Ms. Union's Mark.  (ECF No. 19-1 at 1.)

12. In particular, Saadia would use Ms. Union's name, likeness and Mark to sell GABRIELLE UNION-branded apparel and related merchandise (the "Collection Merchandise") through its websites www.nyandcompany.com, www.fashiontofigure.com, and www.lordandtoaylor.com, which had been acquired by Saadia, as well as at other outlets.  (*Id.* § 2(a); ECF No. 21, ¶¶ 15-16.)

13. In exchange for its exclusive right to use Ms. Union's Mark, Saadia agreed to pay Licensor for its promotional work in connection with the Collection Merchandise ("Endorsement Compensation"). (ECF No. 19-1 § 8(a)(i).)

14. Saadia also agreed to pay Licensor royalties based on Saadia's proceeds from the sale of Collection Merchandise, as well as certain guaranteed royalties ("Guaranteed Royalties"). (*Id.* § 8(a)(ii).)

15. Other than certain initial payments of Endorsement Compensation, the payment of Guaranteed Royalties and the remaining Endorsement Compensation was to occur quarterly, on February 28, May 31, August 31, and November 30 of each contract year (each such date being the close of a "Contract Quarter"). (*Id.* §§ 1(a), 8(b)(i).)

16. Ms. Union negotiated for provisions in the Agreement that would safeguard the reputation and goodwill of her name, brand and Mark.

17. For example, Licensor retained approval rights with respect to Collection Merchandise, including as to the choice of designer (*id.* § 3(a)), the designs chosen (*id.* § 3(c)), and the use of Ms. Union's Mark (*id.* § 3(b)). (*See also* ECF No. 21, ¶ 18.)

18. Saadia was further expressly required to "protect and preserve the image and goodwill that are associated by the public" with Ms. Union. (*Id.* § 3(g).)

19. Saadia also explicitly recognized that Ms. Union's Mark and Ms. Union's broader brand were retained by Licensor "without limitation" and that any use of Ms. Union's Mark by Saadia other than as authorized by Licensor was "strictly prohibited." (ECF No. 19-1, § 10(d).)

20. In performing under the Agreement, Saadia was required "to use commercially reasonable efforts to accommodate [Ms. Union]'s professional commitment schedule." (*Id.* § 3(i)(ii).)

21.     It was further agreed between the parties that in "no event will Licensor or Artist be deemed in breach of [the] Agreement due to [Ms. Union]'s unavailability . . . as a result of a professional commitment . . . ." (*Id.* § 3(i)(i).)

22.     The Agreement contained an explicit default and termination provision. Specifically, upon written notice of either party's material breach of the Agreement, and "failure to cure such breach within fifteen (15) business days after receipt of written notice," either party to the Agreement was empowered to terminate the Agreement. (*Id.* § 18(a).)

23.     Upon termination of the Agreement, Saadia was to "immediately cease and cause the cessation of all of its activities (and those of its affiliates) respecting the Collection [Materials]" including the cessation of all "design, development, manufacture, sale, consumer marketing and distribution of Collection Merchandise." (*Id.* § 18(b)(i).)

24.     In the event that Licensor terminated the Agreement due to Saadia's material breach, Saadia lost any and all "Sell-Off" rights under the Agreement. (*Id.* § 18(b)(ii).)

25.     The GABRIELLE UNION fashion line relaunched at Lord & Taylor and New York & Company in September 2021, and at Fashion to Figure in March 2022 (ECF No. 21, ¶ 21; ECF No. 21-1, pp. 6-9; ECF No. 38, ¶11.)

26.     Ms. Union and her team dedicated significant effort to promote the GABRIELLE UNION brand and Collection Merchandise, including through social media and other channels. (ECF No. 21, ¶ 21)

27.     Beginning in May 2022, Saadia failed to pay Endorsement Compensation, Guaranteed Royalties, and other remuneration owed to Licensor, Ms. Union and her team under the Agreement. (*Id.* ¶ 23.)

28.     Since May 2022, Saadia has not made any payments to Licensor. (*Id.* ¶ 24.)

29. Since May 2022, Saadia has not made any of its promised payments to third parties. (*Id.*)

30. On February 9, 2023, counsel for Licensor sent Saadia a letter informing Saadia that it was in material breach of the Agreement as a result of its failure to pay Guaranteed Royalties, Endorsement Compensation and other payments. (ECF No. 19, ¶ 6; ECF No. 19-2; ECF No. 21, ¶ 25.)

31. Saadia never (i) disputed that it was in material breach of the Agreement, (ii) cured its material breaches or (iii) otherwise responded to the February 9, 2023 letter. (ECF No. 21, ¶ 26.)

32. On March 7, 2023, counsel for Licensor notified Saadia that because Saadia failed to cure its material breaches of the Agreement, Licensor was terminating the Agreement effective immediately, and that Saadia was not permitted to sell through any of its remaining inventory of Collection Merchandise. (ECF No. 19, ¶ 7; ECF No. 19-3; ECF No. 21, ¶ 27.)

33. Despite Licensor's termination of the Agreement due to Saadia's uncured material breaches, and the resulting loss of any Sell-Off rights, Saadia continued to offer Collection Merchandise for sale. (ECF No. 21, ¶¶ 28-32.)

34. On March 20, 2023, Licensor commenced the instant action. (ECF No. 1.)

35. On April 6, 2023, Plaintiffs filed their First Amended Complaint. (ECF No. 11.)

36. After filing the First Amended Complaint, counsel for Plaintiffs promptly emailed a courtesy copy to Saadia's counsel and advised that if Saadia did not stop its continued sale of Collection Merchandise, Plaintiffs would seek injunctive relief. (ECF No. 19, ¶ 12; ECF No. 19-4.)

37. On April 17, 2023, Plaintiffs filed the instant motion by order to show cause for a temporary restraining order and preliminary injunction. (ECF Nos. 17-24) (the "Motion").

38. On April 21, 2023, the Court entered a Temporary Restraining Order, enjoining Saadia from further sales of Collection Merchandise, use of Ms. Union's name, brand and Mark, and granting other relief as specified therein. (ECF No. 31.)

39. On April 27, 2023, Saadia filed opposition papers to the Motion. (ECF Nos. 32-36.)

40. In its opposition papers, Saadia asserted—for the very first time—that Licensor was in breach of the Agreement. (ECF No. 38, ¶¶ 4, 5.)

41. Saadia's declarants asserted vaguely—and also for the first time—that Ms. Union was (i) difficult to schedule as a result of her filming schedule and other professional activities, (ii) delayed granting product approvals, (iii) was generally difficult to work with and (iv) that these issues supposedly led to "negative business outcomes." (ECF No. 33, ¶¶ 5-17; ECF No. 34 ¶¶ 3-6.)

42. It is undisputed that Saadia never sent any written notice pursuant to Section 18(a) of the Agreement that Licensor, Ms. Union or anyone on her team was failing to perform their obligations under the Agreement or were otherwise in breach of the Agreement (ECF No. 38 ¶ 15.)

43. It is undisputed that Saadia never sent any written notice that Licensor, Ms. Union or anyone on her team were required to cure any alleged breach of the Agreement. (*Id.* ¶ 16.)

44. It is undisputed Saadia never sent any written notice that it was terminating the Agreement as a result of any uncured breach by Licensor, Ms. Union or anyone on her team. (*Id.* ¶ 17.)

45. Saadia did not attach any such notices to its opposition papers.

**CONCLUSIONS OF LAW**

46. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1138, as well as 15 U.S.C. § 1121.

47. This Court has personal jurisdiction over Saadia.

48. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c).

49. By failing to pay the required Endorsement Compensation, Guaranteed Royalties and other payments it owed under the Agreement, Saadia materially breached the Agreement.

50. Saadia did not cure its material breaches of the Agreement.

51. On March 7, 2023, Licensor terminated the Agreement as a result of Saadia's uncured material breaches. (ECF No. 19-3.)

52. Because Licensor terminated the Agreement as a result of Saadia's uncured material breaches, Saadia lost any and all Sell-Off rights. (ECF No. 19-1, § 18(b)(ii).)

53. Accordingly, Saadia's license to design, develop, manufacture, sell, market or distribute Collection Merchandise bearing Ms. Union's name and Mark, and otherwise use Ms. Union's name and Mark, expired upon Licensor's termination of the Agreement on March 7, 2023.

54. Where, as here, a party has made a showing of "(1) the likelihood of irreparable injury in the absence of . . . an injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping toward the party requesting the preliminary relief," an injunction is warranted. *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 242 (2d Cir. 2009).

55. Husker has established a likelihood of success on the merits of its trademark claims.

56. To succeed on its trademark claims, Husker must demonstrate that (i) its mark is entitled to protection and (ii) that Saadia's "use of the mark is likely to cause consumers confusion

as to the origin or sponsorship of the defendant's goods." *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).

57. Husker owns the federal registrations for the GABRIELLE UNION trademark. (ECF No. 11-1.) Husker's ownership is prima facie evidence of the validity, ownership and exclusive right by Husker to use that trademark. *See* 15 U.S.C. § 1057(b). Husker's mark is therefore valid and protectable.

58. Saadia continued to use Ms. Union's name and Mark after revocation of its license to do so. (*E.g.*, ECF No. 21, ¶¶ 29-30.)

59. Given that Saadia, an ex-licensee, continued to use Ms. Union's Mark after its license expired, the likelihood of customer confusion is presumed. *Team Rubicon Glob., Ltd. v. Team Rubicon, Inc.*, No. 20-CV-2537-LTS-KNF, 2020 WL 2539117, at *6 (S.D.N.Y. May 19, 2020); *Krispy Kreme Doughnut Corp. v. Satellite Donuts, LLC*, 725 F. Supp. 2d 389, 397 (S.D.N.Y. 2010); *see also Kosher Supervision Servs. Inc. v. Nutritious Creations, Ltd.*, No. 16-CV-6547 (VSB), 2016 WL 9227454, at *2 (S.D.N.Y. Aug. 30, 2016).

60. Plaintiffs have also demonstrated that they are likely to succeed on the merits of their claim for a permanent injunction. *See Baskin-Robbins Ice Cream Co. v. D & L Ice Cream Co.*, 576 F. Supp. 1055, 1060 (E.D.N.Y. 1983).

61. Under the Trademark Modernization Act of 2020, plaintiffs such as Husker who assert claims for trademark infringement and seek a preliminary injunction or temporary restraining order are entitled to a "rebuttable presumption of irreparable harm upon . . . a finding of likelihood of success on the merits." 15 U.S.C. § 1116.

62. Plaintiffs have been, and will continue to be, irreparably harmed absent the issuance of an injunction, because Saadia's illicit conduct places Ms. Union's name, Mark and reputation

"beyond [her] control. And, it is that loss of control which is the very thing that constitutes irreparable harm in the licensing context." *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986).

63. Plaintiffs have no adequate remedy at law, given that loss of control over one's mark is "neither calculable nor precisely compensable." *Mattel, Inc. v. BARBEGIO*, No. 20-CV-11069 (AJN), 2021 WL 848186, at *3 (S.D.N.Y. Mar. 5, 2021).

64. The balance of hardships tilts strongly in Plaintiffs' favor. Absent an injunction, Saadia will continue to use Ms. Union's name, brand and Mark, placing them beyond her control and depriving Husker and Ms. Union of the right to control which products and businesses are associated with Ms. Union's name, brand and Mark.

65. Saadia, on the other hand, faces no legally cognizable hardship from the grant of an injunction, as it has no right to continue selling Collection Merchandise or otherwise benefit from the use of Ms. Union's name, brand and Mark. *E.g.*, *IGT v. High 5 Games, LLC*, No. 17-CV-9792 (ALC), 2018 WL 1374265, at *2 (S.D.N.Y. Mar. 16, 2018); *Mattel*, 2021 WL 848186, at *3.

66. The public interest also strongly favors granting the injunction because the public has a strong interest in "not being deceived" by a trademark infringer. *IGT*, 2018 WL 1374265, at *2; *see also Church of Scientology*, 794 F.2d at 44.

67. Saadia's belated claim that Licensor breached the Agreement and that Saadia thus retains Sell-Off rights is unsupported and does not rebut Plaintiffs' entitlement to a preliminary injunction under these circumstances.

68. It is undisputed that Saadia never served Licensor with a written notice of breach or written notice of termination as a result of any uncured breach. (ECF No. 38 ¶¶ 15-17.)

69. Because Saadia failed to comply with the Agreement's explicit default and termination provisions, Saadia's breach claim fails as a matter of law. *E. Empire Constr. Inc. v. Borough Constr. Grp. LLC*, 200 A.D.3d 1, 5 (1st Dep't 2021).

70. Saadia's belated and unsupported allegations that Licensor breached the Agreement also fail as a matter of law because they are barred by the election of remedies doctrine. Where Saadia never provided notice of any purported breach to Licensor and continued in the Agreement, Saadia waived any claim that Licensor breached. *See, e.g.*, *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, No. 08 Civ. 1563(BSJ), 2009 WL 311362, at *2 (S.D.N.Y. Jan. 29, 2009).

71. Even if Saadia had not waived any claim that Licensor breached the Agreement, its allegations that Licensor breached the Agreement are unsupported by Saadia and disputed by Licensor and Ms. Union. (*See generally* ECF No. 38.) Saadia's claims are also refuted by the Agreement itself. (*E.g.*, ECF No. 19-1 § 3(i)(i) ("In no event will Licensor or Artist be deemed in breach of [the] Agreement due to [Ms. Union]'s unavailability . . . as a result of a professional commitment . . . ."); *see also id.* § 3(i)(ii).)

72. In stark contrast, it is undisputed that Saadia materially breached the Agreement by failing to pay Endorsement Compensation, Guaranteed Royalties and other remuneration owed to Licensor, Ms. Union and others under the Agreement.

73. Where Plaintiffs have demonstrated (i) a likelihood of success on the merits on Husker's claims for trademark infringement and Plaintiffs' claim for a permanent injunction, (ii) that they have and will continue to suffer irreparable harm absent a preliminary injunction, (iii) that the balance of hardships strongly favors Plaintiffs and (iv) that the public interest favors granting the injunction, Plaintiffs motion for a full preliminary injunction is GRANTED. *See*

*Church of Scientology*, 794 F.2d at 44; *Team Rubicon Glob., Ltd.*, 2020 WL 2539117, at *6; *Krispy Kreme*, 725 F. Supp. 2d at 398.

74. Given Saadia's willful infringement, the lack of harm to Saadia from the inability to sell products they no longer have a right to sell, and Plaintiffs' demonstrated likelihood of success on their claims, the Court exercises its discretion and declines to require Plaintiffs' to post any bond. *See, e.g.*, *IGT v. High 5 Games, LLC,* No. 17-CV-9792 (ALC), 2018 WL 2939032, at *3 (S.D.N.Y. Apr. 17, 2018).

Dated: New York, New York
May 10, 2023

PRYOR CASHMAN LLP

By:  /s/ Matthew S. Barkan
    Brad D. Rose, Esq.
    Matthew S. Barkan, Esq.
7 Times Square
New York, New York  10036-6569
(212) 421-4100
*Attorneys for Plaintiffs Flawless Style LLC and FloridaHusker LLC*