UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLAWLESS STYLE LLC, and FLORIDAHUSKER LLC,<br><br>      Plaintiffs,<br><br> -against-<br><br>SAADIA GROUP LLC,<br><br>      Defendant. | No. 1:23-cv-2354-JHR-JW<br><br>Hon. Jennifer H. Rearden |

**PLAINTIFFS FLAWLESS STYLE LLC AND FLORIDAHUSKER LLC'S
REPLY MEMORANDUM OF LAW (1) IN FURTHER SUPPORT OF THEIR
MOTION FOR CONTEMPT AND SANCTIONS AND (2) IN OPPOSITION
TO SAADIA GROUP LLC'S CROSS-MOTION FOR SANCTIONS**

Brad D. Rose
Matthew S. Barkan
Daniel J. Pohlman
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
Tel.: (212) 421-4100
Fax: (212) 798-6307

*Attorneys for Plaintiffs Flawless Style LLC
and FloridaHusker LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

    I.    SAADIA SHOULD BE HELD IN CONTEMPT FOR VIOLATING THE PRELIMINARY INJUNCTION ...........................................................................2

        A.    The Preliminary Injunction Is Clear and Unambiguous ......................................3

        B.    Saadia Failed To Rebut Plaintiff's Clear and Convincing Evidence of Saadia's Violations ...............................................................................................4

            1.    Plaintiffs' Evidence of Saadia's Violations Is Clear and Convincing ............4

            2.    Saadia Failed To Rebut the Clear and Convincing Evidence Provided by Ms. Kaplan ...............................................................................................5

            3.    Saadia Failed To Rebut the Clear and Convincing Evidence in the Barkan Declaration ........................................................................................7

        C.    Saadia Did Not Diligently Comply with the Preliminary Injunction in A Reasonable Manner ...........................................................................................9

    II.    SAADIA OFFERS NO REBUTTAL TO PLAINTIFFS' REQUESTED RELIEF ....................................................................................................................11

    III.    SAADIA'S CROSS MOTION SHOULD BE DENIED ............................................11

CONCLUSION ..........................................................................................................................12

# TABLE OF AUTHORITIES

**PAGE(s)**

**CASES**

*Aquavit Pharma., Inc. v. U-Bio Med., Inc.*,
　No. 19-CV-3351 (VEC), 2020 WL 1900502 (S.D.N.Y. Apr. 17, 2020) .................................10

*Cricut, Inc. v. APA Tech. Ltd. Co.*,
　--- F. Supp. 3d ----, 2023 WL 6370866 (E.D.N.Y. Sept. 30, 2023) ..........................................9

*Disney Enterprises, Inc. v. Sarelli*,
　322 F. Supp. 3d 413 (S.D.N.Y. 2018) ......................................................................................9

*Experience Hendrix, LLC v. Hendrix*,
　No. 17 Civ. 1927 (PAE) (GWG), 2021 WL 82269 (S.D.N.Y. Jan. 11, 2021) ................5, 9, 10

*Foster v. Lee*,
　93 F. Supp. 3d 223 (S.D.N.Y. 2015) ........................................................................................9

*Heritage of Pride, Inc. v. Matinee NYC Inc.*,
　No. 14 CIV. 4165 CM, 2014 WL 3703871 (S.D.N.Y. July 23, 2014) ....................................10

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
　209 F. Supp. 3d 612 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017) ..........................8

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
　369 F.3d 645 (2d Cir. 2004) ......................................................................................................5

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
　No. 99-CV-10174, 2021 WL 3418475 (S.D.N.Y. Aug. 5, 2021) .............................................7

*Really Good Stuff, LLC v. BAP Invs., L.C.*,
　No. 19-CIV-2218 (LLS) (GWG), 2021 WL 2469707 (S.D.N.Y. June 17, 2021) .....................8

**WEBSITES**

https://www.nyandcompanycloset.com/how-it-works ...................................................................7

Plaintiffs Flawless Style LLC ("Licensor") and FloridaHusker LLC ("Husker") respectfully submit this reply memorandum of law in further support of their motion by order to show cause for contempt and sanctions against Defendant Saadia Group LLC ("Saadia") and in opposition to Saadia's cross-motion to sanction Plaintiffs under Rule 11.

## PRELIMINARY STATEMENT

Saadia does not deny that it sold Collection Merchandise with ***sewn-in tags bearing the GABRIELLE UNION Mark,*** or that it used Ms. Union's name on its websites, all in violation of the TRO and Preliminary Injunction. Instead, Saadia asks this Court to believe that it "was unaware that recycled, rental and sale of used clothing was a subject of the TRO" and warns the Court against "castrating its business by applying the TRO beyond its plain meaning." (Saadia Decl. ¶ 8; Opp. at 8.)[1] The Court should not credit Saadia for an instant.

The TRO and Preliminary Injunction clearly barred Saadia from "any" use of Plaintiffs' intellectual property and only authorized sales of Collection Merchandise "following the removal of all references to Plaintiffs' intellectual property" including sewn-in tags. (ECF No. 31 at 1-3.) Saadia even swore to the Court that it was in compliance with this mandate shortly after it issued. (ECF No. 41 ¶¶ 2-3, 5.) Unable to justify its violations and previous misrepresentations to the Court, Saadia seeks to tarnish Plaintiffs' clear and convincing evidence of Saadia's violations with specious complaints that Plaintiffs' private investigator was unqualified to order merchandise from a website and report truthfully to the Court about that process, and that certain screenshots were not stamped with the date they were captured.

---

[1] "Saadia Decl." refers the Declaration of Jack Saadia (ECF No. 71). "Opp." refers to Defendant's opposition brief (ECF No. 70). "Motion" or "Mot." refers to Plaintiffs' Memorandum of Law in Support of Their Motion for Contempt and Sanctions (ECF No. 65). Undefined capitalized terms retain their meanings from the Motion.

1

As set forth below, none of Saadia's gripes undercut Plaintiffs' evidence, which clearly and convincingly establishes Saadia's violations of the TRO and Preliminary Injunction. Indeed, Saadia does not even deny that it created the Closet website to obscure its continued use of Ms. Union's name and sales of Collection Merchandise bearing the GABRIELLE UNION Mark. And despite Saadia's claims that it undertook "every possible effort" to comply with the Court's orders (Saadia Decl. ¶ 14), it offers not a shred of evidence – not a single email, memo, record or invoice – demonstrating *any* effort to comply, much less a diligent effort.

In a final act of desperation, Saadia cross-moves for sanctions against *Plaintiffs* on the sole basis that they did not provide Saadia advance notice of their Motion. Saadia points to no authority requiring Plaintiffs to do so, and Plaintiffs are certainly not required to accept Saadia's self-serving (and frankly absurd) explanations for its violations. The cross-motion should be summarily denied.

With the creation of Closet, Saadia has sought yet again to capitalize on Ms. Union's carefully-honed talents and hard-won success, again without paying her a dime. Saadia is as cavalier toward this Court's orders as it is with its contractual obligations to Plaintiffs. As set forth below and in Plaintiffs' moving papers, Saadia should be held in civil contempt and sanctioned.

I. **SAADIA SHOULD BE HELD IN CONTEMPT FOR VIOLATING THE PRELIMINARY INJUNCTION**

As set forth in Plaintiff's opening brief, a court may hold a party in contempt where "(1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." (Mot. at 5-6 (citing *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016).) Saadia purports to dispute only the second and third elements. (Opp. at 7 ("While Defendants [*sic*] do not address the clarity of the TRO in this Opposition, Plaintiffs fail to provide proper proof and

fail to show Defendants have not attempted to comply.")  Saadia fails to meaningfully contest Plaintiffs' proof as to each element and should be held in contempt as a result.

### A. The Preliminary Injunction Is Clear and Unambiguous

Saadia purports not to dispute that the TRO and Preliminary Injunction are clear and unambiguous.  (*Id.*)  As a result, it concedes that Plaintiffs have established this element.  At the same time, Saadia directly challenges the reach of the Court's restraints.  Mr. Saadia actually declares to the Court under penalty of perjury that he was "unaware that recycled, rental and sale of used clothing was the subject of the TRO."  (Saadia Decl. ¶ 8.)

The Court should respectfully decline to credit such a preposterous notion.  The Preliminary Injunction plainly barred Saadia from "any further use of Plaintiffs' intellectual property" and made absolutely clear that Saadia was forbidden from "distributing or selling any Collection Merchandise" and could only do so "following the removal of all references to Plaintiffs' intellectual property" including sewn-in tags.  (ECF No. 31 at 1-3.)  Mr. Saadia's contention that he was "unaware" of the scope of the Preliminary Injunction defies common sense.

Saadia's all-caps insistence that the items offered through Closet are "RECYCLED" or "rented" (Opp. at 6; Saadia Decl. ¶ 12) does not remotely excuse Saadia's noncompliance.  However Saadia chooses to mince and twist the Court's words, Saadia was under an obligation not to make *any* use of Collection Merchandise without first removing all instances of the GABRIELLE UNION Mark, and not to make any use Ms. Union's name, including on any of Saadia's websites. Whether Saadia is putting Collection Merchandise bearing the GABRIELLE UNION Mark into the hands of consumers (and profiting from it) by offering the merchandise through a "rental" service is of no moment.  Nor does Saadia's description of Closet as offering "recycled" or "used" items excuse or even explain Saadia's conduct.

Similarly, the Court should not lend any credence to Saadia's incredible claim that the TRO and Preliminary Injunction did not apply to Closet. (*E.g.*, Saadia Decl. ¶ 8 ("I did not see that Closet was a subject of the TRO."); Opp. at 6 ("It is unclear as to whether a website platform that recycles, rents and gives option to purchase *used* items is subjected to the Order."); *id.* at 8 (the "Court should not join Plaintiffs who would have this Court castrate Defendants' [sic] business by applying the TRO beyond its plain meaning.").) The TRO and Preliminary Injunction plainly apply to "Defendant, its subsidiaries, partners, members, *affiliates*, officers, agents, servants, attorneys, employees *and those in active concert or participation with them or any of them who receive actual notice of this stipulation and Order*." (ECF No. 31 at 1 (emphases added).) Saadia flatly concedes its affiliation with Closet by its repeated references to "New York & Company Closet." (*E.g.*, Opp. at 7 (implying that the TRO and Preliminary Injunction do not apply to Closet because the "TRO at hand specifically names three (3) websites, however *New York & Company Closet is not one of those listed.*") (emphasis added).

  **B.**   **Saadia Failed To Rebut Plaintiff's Clear and Convincing Evidence of Saadia's Violations**

    1.   Plaintiffs' Evidence of Saadia's Violations Is Clear and Convincing

In support of its Motion, Plaintiffs provided ample clear and convincing evidence that Saadia (i) offered for sale and sold Collection Merchandise containing sewn-in tags bearing Ms. Union's name and Mark and (ii) continued use of Ms. Union's name in connection with sales of that Collection Merchandise on Closet's website and on other websites. In particular, Plaintiffs provided the Declaration of Ms. Maxine Kaplan, a private investigator for Plaintiffs who visited Closet's website, viewed three pieces of Collection Merchandise which were described using Ms. Union's name, and placed an order for these items. (Kaplan Decl. ¶¶ 4-5 & Exs. A & B; Mot. at 4-5.) On November 27, 2023, Ms. Kaplan received the items she ordered from Closet and

4

discovered that **_all three items_** bore sewn-in fabric tags containing the GABRIELLE UNION Mark. (Kaplan Decl. ¶ 6 & Ex C.)  Plaintiffs are prepared to submit this physical merchandise to the Court as evidence.[2]

Plaintiffs additionally provided true and correct copies of screenshots demonstrating **forty-nine** uses of Ms. Union's name and mark across the Closet and New York & Company websites. (Barkan Decl. ¶¶ 10-11 & Exs. A & B.)  These screenshots were captured by Pryor Cashman paralegal Ruben Montilla on November 20, 2023.  (*Id.*; Montilla Decl. ¶ 4.[3])  Saadia does not deny that the Closet and New York & Company websites are within its complete control.

Plaintiffs thus submitted clear and convincing evidence of Saadia's violation of the Preliminary Injunction, supported by sworn declarations and accompanying exhibits.  *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 656 (2d Cir. 2004) (upholding trial court determination that similar evidence was clear and convincing and observing that "[t]he clear and convincing evidence is that [defendant] did not comply"); *Experience Hendrix, LLC v. Hendrix*, No. 17 Civ. 1927 (PAE) (GWG), 2021 WL 82269, at *6 (S.D.N.Y. Jan. 11, 2021) (distribution of infringing goods was clear and convincing evidence of violation); *see also* Mot. at 8-9.)

     2.  Saadia Failed To Rebut the Clear and Convincing
        <u>Evidence Provided by Ms. Kaplan</u>

Saadia's attempt to discredit Ms. Kaplan is specious.  Saadia claims that Ms. Kaplan "provides no credentials or qualifications to act as a trademark infringement or e-commerce investigator."  (Opp. at 5; *see also* Shapiro Decl. ¶ 11 ("Her declaration indicates no area of expertise or credentials.").)  But Ms. Kaplan does not purport to reach conclusions on the subject

---

[2] It is unclear how Saadia's counsel, Mr. Shapiro, could truthfully declare to the Court under penalty of perjury that "None of the items identified by opposing counsel contain Ms. Union's name or Mark."  (ECF No. 72 ¶ 7.)

[3] "Montilla Decl." refers to the Reply Declaration of Ruben Montilla, dated January 4, 2023, submitted herewith.

of infringement. Rather, Ms. Kaplan viewed, ordered and received merchandise from a website and then reported truthfully to the Court under penalty of perjury regarding that process. Saadia does not explain what "credentials" Ms. Kaplan lacks to provide this service.

Saadia further seeks to undermine Ms. Kaplan's evidence by complaining that the email address of the individual who ordered the Collection Merchandise is redacted, that she did not include an "email receipt of the order" and that Mr. Saadia was unable to "verify" her order. (Opp. at 5; Saadia Decl. ¶ 4.) Saadia does not explain why the absence of an email receipt undercuts Ms. Kaplan's declaration: she attached a picture of the order confirmation screen complete with order number, order summary, photographs and names of the items ordered and the price paid. (Kaplan Decl., Ex. B.) She further testified under penalty of perjury that Exhibit B was a "true and correct copy" of the confirmation screen. (*Id.* ¶ 5.)[4] The same information would be in the email receipt. Moreover, there is an obvious professional explanation for why the email address was redacted from Exhibit B: it would do no good for investigators in Ms. Kaplan's line of work to have the email addresses used to order merchandise from suspected infringers published.

Finally, Saadia seeks to make much of the fact that Ms. Kaplan's prior employer is no longer in operation and that Ms. Kaplan is now employed by a different company. (Opp. at 5-6.) But companies go out of business frequently and Ms. Kaplan provided both the name of her employer at the time of her retention, and the name of her present employer. (Kaplan Decl. ¶ 1, 4, n.1.) Saadia fails to explain why Ms. Kaplan's employment history undermines her testimony or credibility (and of course, it does not).

In addition to the photographic proof submitted with Plaintiffs' moving papers, Plaintiffs also possess direct physical evidence of Saadia's noncompliance in the form of the goods ordered

---

[4] Plaintiffs will submit the unredacted version of Kaplan Decl. Ex. B. to the Court *in camera* upon request.

by Ms. Kaplan which arrived bearing sewn-in tags with the GABRIELLE UNION Mark. (*See* Kaplan Decl. ¶ 6 & Ex. C.)  Saadia attempts to downplay the scope of its obvious violations by contending that "perhaps a few errant pieces [we]re returned and the warehouse personnel on duty may have just been unaware to remove the label before restocking [sic]." (Opp. at 6.)  This is beyond implausible.

Ms. Kaplan did not order a slew of items, waiting to see which, if any, continued to bear Ms. Union's Mark.  Instead, she ordered three items that mentioned "Gabrielle" or "Gabrielle Union" in the description, and upon receipt of those three separate items she found that ***all three*** bore sewn-in labels bearing the GABRIELLE UNION Mark in violation of the TRO and Preliminary Injunction. (Kaplan Decl. ¶¶ 4-6; ECF No. 31.)  Further, Saadia represents to Closet customers that it "inspect[s] each item when it is sent back to ensure it's still like new." *See* https://www.nyandcompanycloset.com/how-it-works.  Even assuming the truth of its representation, it is baffling that Saadia would not meticulously ensure that labels and tags bearing the GABRIELLE UNION Mark were removed, given that Saadia knew that it was subject to an order from this Court requiring it to do so. (Saadia Decl. ¶ 14.)  Saadia's conduct is not in line with a party's "duty to keep a safe distance from the line drawn by the district court's injunction." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10174, 2021 WL 3418475, at *5, *9 (S.D.N.Y. Aug. 5, 2021) (internal quotations and citation omitted).

        3.      <u>Saadia Failed To Rebut the Clear and Convincing Evidence in the Barkan Declaration</u>

Saadia further contends that the screenshots included as Exhibits A and B to the Barkan Declaration are inadmissible because the screenshots do not contain dates and the declaration does

7

not state who captured them.[5] (Opp. at 3-4; Shapiro Decl. ¶ 10.) The Barkan Declaration plainly states, under penalty of perjury, that the screenshots were captured on November 20, 2023. (Barkan Decl. ¶¶ 10-11; Montilla Decl. ¶¶ 4,6.) That is sufficient evidentiary basis for the screenshots, and even Saadia's own case law holds as much. *See, e.g.*, *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 665 n.75 (S.D.N.Y. 2016) (cited by Saadia and holding that screenshots were "sufficiently reliable to be received" because, exactly as here, they were accompanied by an attestation that they were a "true and correct copy . . . retrieved from a particular website on a particular date."), *aff'd*, 720 F. App'x 24 (2d Cir. 2017).[6]

Saadia's citation to *Really Good Stuff, LLC v. BAP Invs., L.C.* fares no better. (Opp. at 3 (citing No. 19-CIV-2218 (LLS) (GWG), 2021 WL 2469707 (S.D.N.Y. June 17, 2021).) The court in *Really Good Stuff* only declined to credit certain screenshots where, *unlike here*, the movant failed to provide the date on which the screenshots were captured or identify who captured them and the screenshots showed third-party websites over which the alleged contemnor did not have control. *Id.* at *5. None of those factors are present here, where Plaintiffs have provided the date on which the screenshots were captured and the names of the individuals capturing them. (Kaplan Decl. ¶¶ 4-5; Montilla Decl. ¶¶ 4-6; Barkan Decl. ¶¶ 10-12.) Moreover, Saadia does not disclaim

---

[5] Saadia also repeatedly takes issue with the fact that Ms. Union's name was used in customer comments that predated the entry of the Preliminary Injunction. (*E.g.*, Opp. at 3; Saadia Decl. ¶ 3.) However, this demonstrates only that Saadia failed to scrub its websites of all uses of Ms. Union's name, including in customer reviews that continue to mention Ms. Union, thus continuing to suggest an ongoing relationship between Saadia's brands and Ms. Union.

[6] It is perplexing that Saadia relies on *LVL XIII* for the proposition that "evidence was found inadmissible in a contempt case when Plaintiff failed to supply any testimony from a person with personal knowledge as to the accuracy of these screenshots." (Opp. at 4.) As noted, the screenshots were received by the Court and the opinion did not even a concern a motion for contempt. *See generally* 209 F. Supp. 3d at 612.

that it exercises complete control over the content of the Closet and New York & Company, nor could it.[7]

### C. Saadia Did Not Diligently Comply with the Preliminary Injunction in a Reasonable Manner

Saadia does not describe in any detail the purported "reasonable methods of compliance" it deployed. *See Cricut, Inc. v. APA Tech. Ltd. Co.*, --- F. Supp. 3d ----, 2023 WL 6370866, at *7 (E.D.N.Y. Sept. 30, 2023) ("Reasonable diligence, at the very least, requires a party to develop reasonably effective methods of compliance."). Against the concrete evidence provided by Plaintiffs, Saadia provides precisely zero evidence of *any* attempt to comply with the Court's orders, much less a diligent effort.

Who did Saadia task with removing Ms. Union's name and Mark from its websites and from Collection Merchandise before it was sold on Saadia's newly created online storefront? Where are Saadia's records demonstrating the number of labels removed and from which SKUs? If Saadia hired third parties for these tasks, where are the invoices and other records of the work performed? Mr. Saadia swears under penalty of perjury that "under my direction, every possible effort was made to remove Gabrielle Union's label from all items in New York & Co. Collections as required by the TRO. If a random piece is found with her label, employees are directed to remove it." (Saadia Decl. ¶ 14.) Where are Saadia's emails or memos demonstrating such heroic efforts and instructions? Surely a party making a diligent effort to comply with a Court order would put forward some documentation to substantiate its efforts. *See Experience Hendrix, LLC*,

---

[7] Saadia's other cases are inapposite as they concern the special case of authenticating internet *archival* materials. *See e.g., Disney Enterprises, Inc. v. Sarelli*, 322 F. Supp. 3d 413, 443 (S.D.N.Y. 2018) (in evaluating claim of infringement on summary judgment, court held archived images were inadmissible without testimony from employee of archival service); *Foster v. Lee*, 93 F. Supp. 3d 223, 231 (S.D.N.Y. 2015) (on summary judgment, plaintiff presented affidavit of internet archival service employee and could thus authenticate evidence of when photograph first appeared on internet so as to create material issue of fact). Ultimately, Saadia fails to identify any case law that undercuts Plaintiffs' clear and convincing evidence of Saadia's violations of the TRO and Preliminary Injunction.

2021 WL 82269, at *7 ("defendants have not demonstrated any attempt to comply with the permanent injunction, let alone a diligent one.").

The sum total of Saadia's evidence here is that an unnamed "warehouse employee just may not have known to remove the label . . . ." (Saadia Decl. ¶ 13.) But informing its employees and third parties of what must be done to comply was among Saadia's most basic obligations under the TRO and Preliminary Injunction. *See Aquavit Pharma., Inc. v. U-Bio Med., Inc.*, No. 19-CV-3351 (VEC), 2020 WL 1900502, at *3, 9 (S.D.N.Y. Apr. 17, 2020) (finding lack of diligence where defendants "failed to proactively scrub their websites of non-compliant posts"); *Experience Hendrix, LLC*, 2021 WL 82269, at *7 (finding no "attempt to comply with the permanent injunction" where party continued using infringing name and likeness).[8]

Mr. Saadia's carefully worded language further undercuts his claims of Saadia's diligence. With respect to the numerous uses of Ms. Union's name on Saadia's Closet and New York & Co. websites (*see* Barkan Decl. Exs. A & B; Kaplan Decl. Ex. A), Mr. Saadia vaguely states only that "I have ensured that none of those listings are on the site." (Saadia Decl. ¶¶ 2, 4-5.) Mr. Saadia studiously avoids stating *when* the references were removed (*i.e.*, before Plaintiffs filed their Motion, or more likely, *after*).

Saadia's other declaration fails to bolster Saadia's claims of diligence. Ms. Jackie Huang, an attorney for Saadia, offers the vague statement that Shapiro & Associates "have advised SAADIA GROUP LLC to confirm prior efforts and current efforts." (ECF No. 73 ¶ 5.) Ms. Huang

---

[8] Accordingly, Saadia's conduct stands in sharp contrast to that described in the cases it cites. For example, in *Heritage of Pride, Inc. v. Matinee NYC Inc.*, No. 14 CIV. 4165 CM, 2014 WL 3703871, at *1 (S.D.N.Y. July 23, 2014) the court refused to enter sanctions based on a defendant's supposed failure to scrub all use of an infringing logo within *eight days*, where a plaintiff moved for contempt before full compliance with the preliminary injunction order was due. That is a far cry from Saadia's conduct here, where months have elapsed since the Court entered the TRO and Preliminary Injunction and Saadia had previously sworn to the Court that it was in compliance, removed references to Ms. Union from its websites, "refrained from selling Collection Merchandise with sewn-in labels" and "instructed all necessary personnel to comply with such orders." (ECF No. 41 ¶¶ 2-3, 5.)

does not describe those efforts, much less state whether Saadia ever confirmed them, and does not state when any remedial action, if any, occurred. At best, Ms. Huang states that based on her own review as of December 20, 2023 (*i.e.*, two weeks *after* Plaintiffs filed their Motion), Saadia has purportedly remedied the violations identified by Plaintiffs. (*Id.* ¶ 8.) Ms. Huang's statement does nothing to undercut Plaintiffs' Motion, and is deceptive to the extent it suggests that Saadia never violated the Preliminary Injunction.

II. **SAADIA OFFERS NO REBUTTAL TO PLAINTIFFS' REQUESTED RELIEF**

Saadia barely disputes that Plaintiffs' are entitled to the requested sanctions should the Court hold Saadia in contempt. (Opp. at 9 (vaguely characterizing the requested sanctions as "inappropriate"). Plaintiffs' requested sanctions include an award of money damages to Plaintiffs, Plaintiffs' attorneys' fees and costs as a result of Saadia's lack of good faith efforts to comply, a periodically increasing daily coercive fine against Saadia until it unequivocally demonstrates full compliance with the TRO and Preliminary Injunction, and the provision to Plaintiffs and the Court of records concerning Saadia's sales of Collection Merchandise and websites bearing Ms. Union's name, as well as statements detailing Saadia's purported efforts to comply with the Court's orders. (*See* Mot at 11-15; ECF No. 62 at 2.) The Court should respectfully grant this relief to Plaintiffs.

III. **SAADIA'S CROSS MOTION SHOULD BE DENIED**

In a last-ditch effort, Saadia has submitted a retaliatory cross-motion for sanctions against *Plaintiffs* for failure to provide advance notice of their Motion and not withdrawing it upon Saadia's purportedly innocent explanation. (ECF No. 69; Opp. at 10-11.) Saadia does not cite a single case to support its cross-motion. Such advance notice is not required by the Federal Rules of Civil Procedure, or the Local Rules of this District. Saadia's afterthought cross-motion is utterly frivolous and should respectfully be denied out-of-hand.

## CONCLUSION

As set forth above and in Plaintiffs' moving papers, Plaintiffs respectfully request that this Court enter an order (i) finding Saadia in civil contempt of the Preliminary Injunction; (ii) imposing against Saadia a daily and periodically-increasing coercive fine; (iii) awarding Plaintiffs compensatory damages in an amount equal to the greater of (a) Saadia's ill-gotten profits from violating the TRO and Preliminary Injunction, or (b) a reasonable royalty; (iv) awarding Plaintiffs their attorneys' fees and costs in bringing this Motion; (v) ordering Saadia to fully and immediately comply with the Preliminary Injunction and provide the other miscellaneous information and statements requested herein, (vi) denying in its entirety Saadia's cross-motion for sanctions, and (vii) granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 4, 2023

PRYOR CASHMAN LLP

By: _/s/ Matthew S. Barkan_
Brad D. Rose, Esq.
Matthew S. Barkan, Esq.
Daniel J. Pohlman, Esq.
7 Times Square
New York, New York  10036-6569
(212) 421-4100
*Attorneys for Plaintiffs Flawless Style LLC and FloridaHusker LLC*