**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FLAWLESS STYLE LLC, and FLORIDAHUSKER LLC, | No. 1:23-cv-2354-JHR-JW |
| Plaintiffs, | Hon. Jennifer H. Rearden |
| -against- | |
| SAADIA GROUP LLC, | |
| Defendant. | |

**PLAINTIFFS FLAWLESS STYLE LLC AND FLORIDAHUSKER LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR DEFAULT**
**<u>JUDGMENT AGAINST SAADIA GROUP LLC</u>**

Brad D. Rose
Matthew S. Barkan
Felicity Kohn
Daniel J. Pohlman
Nicholas Saady
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
Tel.: (212) 421-4100
Fax: (212) 798-6307

*Attorneys for Plaintiffs Flawless Style LLC*
*and FloridaHusker LLC*

## <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 2

    I.     SAADIA BREACHES THE PARTIES' LICENSE AGREEMENT ........................... 2

    II.    LICENSOR FILES SUIT AGAINST SAADIA AND OBTAINS A
          PRELIMINARY INJUNCTION ............................................................................... 3

    III.   SAADIA CONTINUES TO SELL MERCHANDISE WITH MS.
          UNION'S NAME AND MARK IN VIOLATION OF THE
          PRELIMINARY INJUNCTION ............................................................................... 4

    IV.   LICENSOR'S DAMAGES ....................................................................................... 5

          A.  Nonpayment of Guaranteed Royalties ......................................................... 5

          B.  Nonpayment of Endorsement Compensation ............................................... 5

          C.  Other Failed Payments Warranting Specific Performance ........................... 6

    V.    SAADIA'S FAILURE TO OBTAIN COUNSEL MERITS DEFAULT
          JUDGMENT ............................................................................................................ 7

ARGUMENT ................................................................................................................................. 7

    I.     LEGAL STANDARDS ............................................................................................ 7

    II.    DEFAULT JUDGMENT AGAINST SAADIA IS WARRANTED ............................. 9

          A.  Default Judgment Should Be Granted on Plaintiff's First Cause of
               Action (Breach of Contract – Guaranteed Royalties) ................................ 11

          B.  Default Judgment Should Be Granted on Plaintiff's Second Cause of
               Action (Breach of Contract – Endorsement Compensation) ..................... 12

          C.  Default Judgment Should Be Granted on Plaintiff's Third Cause of
               Action (Breach of Contract – Other Failed Payments) .............................. 12

          D.  Default Judgment Should Be Granted on Plaintiff's Fourth and Fifth
               Causes of Action (Federal Trademark Infringement – 15 U.S.C. § 1114
               & 1125(a)) ................................................................................................. 14

              1.  Permanent Injunctive Relief Is Warranted ..................................... 15

              2.  An Award of Attorneys' Fees and Costs Is Warranted ................... 17

          E.  Default Judgment Should Be Granted on Plaintiff's Sixth Cause of
               Action (Permanent Injunction) .................................................................. 18

F.   Saadia's Counterclaims and Affirmative Defenses Should Be
     Stricken ..........................................................................................................19

III.   PLAINTIFFS HAVE SHOWN THE AMOUNT OF DAMAGES,
       ATTORNEYS' FEES AND COSTS TO BE AWARDED WITH
       REASONABLE CERTAINTY .....................................................................20

       A.   Damages .............................................................................................20

       B.   Attorneys' Fees and Costs .................................................................22

CONCLUSION.................................................................................................................23

**TABLE OF AUTHORITIES**

**PAGE(s)**

**CASES**

*4 Pillar Dynasty LLC v. New York & Co., Inc.*,
  933 F.3d 202 (2d Cir. 2019).................................................................17

*Action S.A. v. Marc Rich & Co.*,
  951 F.2d 504 (2d Cir. 1991), *cert. denied*, 503 U.S. 1006 (1992)...........................................20

*Antetokounmpo v. Constantino*,
  No. 21-cv-2198-JMF-JLC, 2021 WL 5916512 (S.D.N.Y. Dec. 15, 2021),
  *report and recommendation adopted*, 2022 WL 36232 (S.D.N.Y. Jan. 4, 2022)..............17, 18

*Arch Ins. Co. v. Sky Materials Corp.*,
  No. 17 CV 2829 (CBA)(LB), 2021 WL 966110 (E.D.N.Y. Jan. 29, 2021),
  *report and recommendation adopted*, 2021 WL 964948 (E.D.N.Y. Mar. 15,
  2021) ...........................................................................................9, 11

*Asesoral Bus. Partners, LLC v. Seatech Worldwide Corp.*,
  No. 19-CIV-11512(AJN)(SLC), 2021 WL 6755016 (S.D.N.Y. Dec. 16, 2021),
  *report and recommendation adopted*, 2022 WL 1265945 (S.D.N.Y. Apr. 28, 2022).............21

*Berdini v. Nova Sec. Grp.*,
  No. 13-CV-5672, 2015 WL 5540735 (E.D.N.Y Sept. 2, 2015), *report and
  recommendation adopted,* 2015 WL 5541233 (E.D.N.Y Sept. 18, 2015)........................19, 20

*Cap. One Fin. Corp. v. Cap. One Certified Inc.*,
  No. 18-cv-580-ARR-RML, 2019 WL 1299266 (E.D.N.Y. Mar. 5, 2019), *report
  and recommendation adopted*, 2019 WL 1299661 (E.D.N.Y. Mar. 21, 2019) ......................17

*Christa Constr., LLC v. Connelly Drywall, LLC*,
  879 F. Supp. 2d 389 (W.D.N.Y. 2012) ...................................................................8

*City of New York v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011).................................................................8

*Deutsche Bank Nat'l Tr. Co. for Morgan Stanley Structured Tr. I 2007-1 v.
  Morgan Stanley Mortg. Cap. Holdings LLC*,
  289 F. Supp. 3d 484 (S.D.N.Y. 2018)...................................................................14

*Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*,
  631 F.3d 42 (2d Cir. 2011)...................................................................11

*Eagle Assocs. v. Bank of Montreal*,
  926 F.2d 1305 (2d Cir. 1991)...................................................................19

*Experience Hendrix, LLC v. Pitsicalis*,
    No. 17-cv-1927-PAE-GWG, 2020 WL 3564485 (S.D.N.Y. July 1, 2020), *report*
    *and recommendation adopted*, 2020 WL 4261818 (S.D.N.Y. July 24, 2020) .......................18

*Finkel v. Romanowicz*,
    577 F.3d 79 (2d Cir. 2009)...................................................................................................10

*First Tech. Cap., Inc. v. Airborne, Inc.*,
    378 F. Supp. 3d 212 (W.D.N.Y. 2019) ......................................................................9, 10, 11

*Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*,
    647 F. Supp. 3d 145 (S.D.N.Y. 2022)..................................................................................16

*Hermès Int'l v. Rothschild*,
    678 F. Supp. 3d 475 (S.D.N.Y. 2023)..................................................................................15

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*,
    767 F. Supp. 2d 480 (S.D.N.Y. 2011)..............................................................................8, 19

*HTV Indus., Inc. v. Agarwal*,
    317 F. Supp. 3d 707 (S.D.N.Y. 2018)..................................................................................20

*Inga v. Nesama Food Corp.*,
    No. 20-CIV-0909 (ALC) (SLC), 2021 WL 3624666 (S.D.N.Y. July 30, 2021),
    *report and recommendation adopted*, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021) ........9, 11

*Integrity Commc'ns Corp. v. Baker*,
    No. 10 CIV. 3238, 2012 WL 1309153 (S.D.N.Y. Mar. 26, 2012), *report and*
    *recommendation adopted*, 2012 WL 1309136 (S.D.N.Y. Apr. 16, 2012)...............................10

*Island Software & Comput. Serv., Inc. v. Microsoft Corp.*,
    413 F.3d 257 (2d Cir. 2005).................................................................................................15

*Jeepster Recordings Ltd. v. World's Fair Label Grp., Inc.*,
    No. 09 CIV 2155 (RLE), 2010 WL 653476 (S.D.N.Y. Feb. 22, 2010).......................11, 20, 21

*Jones v. Niagara Frontier Transp. Auth.*,
    722 F.2d 20 (2d Cir. 1983)................................................................................................7, 8

*Juicy Couture, Inc. v. Bella Int'l Ltd.*,
    930 F. Supp. 2d 489 (S.D.N.Y. 2013)..................................................................................16

*K2M Design, Inc. v. Schmidt*,
    No. 1:22-CV-03069 (MKV), 2024 WL 1313392 (S.D.N.Y. Mar. 26, 2024).........................11

*Kingvision Pay-Per-View, Ltd. v. Legendary Rest. 2000, Inc.*,
    No. 01 CIV. 5517 (HBP), 2003 WL 1878244 (S.D.N.Y. Apr. 11, 2003) ..............................10

*Knowles-Carter v. Feyonce, Inc.*,
   347 F. Supp. 3d 217 (S.D.N.Y. 2018)..................................................................14

*L & L Wings, Inc. v. Marco-Destin Inc.*,
   756 F. Supp. 2d 359 (S.D.N.Y. 2010)...............................................................21

*Lattanzio v. COMTA*,
   481 F.3d 137 (2d Cir. 2007)...........................................................................7, 8

*Lenard v. Design Studio*,
   889 F. Supp. 2d 518 (S.D.N.Y. 2012)..............................................................20

*Lopez v. Emerald Staffing, Inc.*,
   No. 18 Civ. 2788 (SLC), 2020 WL 915821 (S.D.N.Y. Feb. 26, 2020) ..................10

*Med. Econ. Co. v. Healthexchange, Inc.*,
   No. 01 CIV.11262 KMW AJP, 2003 WL 22346391 (S.D.N.Y. Oct. 15, 2003) ....................20

*NML Cap. v. Republic of Argentina*,
   17 N.Y.3d 250, 928 N.Y.S.2d 666 (2011) .............................................................6

*Northfield Ins. Co. v. Mannara Contracting Corp.*,
   No. 18-CV-6447, 2019 WL 5874063 (E.D.N.Y. Aug. 22, 2019), *report and
   recommendation adopted*, 2019 WL 4291652 (E.D.N.Y. Sept. 11, 2019)...........................20

*Octane Fitness, LLC v. ICON Health & Fitness*,
   572 U.S. 545 (2014)......................................................................................17

*Philip Morris USA Inc. v. A & V Minimarket, Inc.*,
   592 F. Supp. 2d 669 (S.D.N.Y. 2009), *judgment entered*, 592 F. Supp. 2d 677
   (S.D.N.Y. 2009) ...........................................................................................19

*Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC*,
   553 F. Supp. 2d 201 (E.D.N.Y. 2008) .............................................................17

*Rattigan v. Commodore Int'l Ltd.*,
   739 F. Supp. 167 (S.D.N.Y. 1990) ..................................................................21

*Rowland v. Cal. Men's Colony*,
   506 U.S. 194 (1993)........................................................................................8

*Rutledge v. Haru Inc.*,
   No. 20-CV-7641 (AJN), 2021 WL 4429328 (S.D.N.Y. Sept. 27, 2021) ..............................22

*SEC v. Citigroup Glob. Mkts., Inc.*,
   752 F.3d 285 (2d Cir. 2014)........................................................................15, 19

*Spin Master Ltd. v. Alvy*,
   19 Civ. 3452 (LGS), Dkt. No. 100 (S.D.N.Y. Sept. 3, 2019)....................................8

*Streamlight, Inc. v. Gindi*,
    No. 18-cv-987 (NG) (RLM), 2019 WL 6733022 (E.D.N.Y. Oct. 1, 2019), *report
    and recommendation adopted*, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019) ......................18

*Trans-Pro Logistic v. Coby*,
    No. 05 CV 1759 (CLP), 2012 WL 526764 (E.D.N.Y. Feb. 16, 2012) ....................................6

*Virgin Enters. Ltd. v. Nawab*,
    335 F.3d 141 (2d Cir. 2003)................................................................................................14

*Xerox Corp. v. Graphic Mgmt. Servs., Inc.*,
    No. 11-CV-6397, 2014 WL 3894381 (W.D.N.Y. Aug. 8, 2014) ...........................................10

## STATUTES & RULES

15 U.S.C. §1114................................................................................................................14

15 U.S.C. § 1116...............................................................................................................15

15 U.S.C. § 1117...........................................................................................................15, 17

15 U.S.C. § 1125(a)...........................................................................................................14

28 U.S.C. 1961.................................................................................................................21

Fed. R. Civ. P. 55(a) ........................................................................................................8, 9

Plaintiffs Flawless Style LLC ("Licensor") and FloridaHusker LLC ("Husker") (together, "Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Default Judgment (ECF No. 86) (the "Motion") against Defendant Saadia Group LLC ("Saadia").

## PRELIMINARY STATEMENT

Plaintiffs' Motion is predicated on Saadia's failure to appear in this action through counsel by the deadline set by this Court. The law in this Circuit is clear that limited liability companies are not permitted to represent themselves *pro se*. Rather, they are required to retain counsel to appear and defend actions instituted against them. Thus, the law mandates that default judgment follows when a limited liability company fails to obtain counsel. In this case, despite this Court's May 9, 2024 order granting the withdrawal of Saadia's prior counsel and ordering it to obtain new counsel no later than June 12, 2024 (*see* ECF No. 79), Saadia failed to do so.

Saadia's failure to timely appear through counsel is consistent with Saadia's conduct throughout this Action — Saadia has a total disregard for the law and believes it can act with impunity. Plaintiffs commenced this action over a year ago, on March 20, 2023, at which time Saadia owed Licensor approximately $1.78 million in royalty and other payments after defaulting under the parties' License Agreement. (ECF No. 1.) When Saadia continued selling merchandise bearing Plaintiffs' GABRIELLE UNION name and trademark after the License Agreement had been terminated, Plaintiffs sought, and the Court granted, a temporary restraining order and ultimately a preliminary injunction barring Saadia from further sales. (ECF Nos. 31, 52.) And when it turned out that Saadia was continuing sales of infringing merchandise in violation of the preliminary injunction (despite its prior representations to the Court otherwise), Plaintiffs promptly moved by Order to Show Cause to hold Saadia in civil contempt and for sanctions. (ECF No. 62.) At every turn, Saadia has sought to exploit Ms. Union's hard-earned

1

reputation for its own commercial benefit without paying her a dime of the royalties and other payments that are long past due. Saadia now continues to flout the law by failing to abide by this Court's order requiring it to obtain new counsel on or before June 12, 2024.

The three requirements for obtaining default judgment against Saadia are satisfied. First, given Saadia's failure to obtain counsel despite this Court's order, Saadia's default was willful. Second, all of the well-pleaded allegations and arguments in the First Amended Complaint, Plaintiffs' Motion to Dismiss Counterclaims and Strike Affirmative Defenses, and Plaintiffs' Motion for Sanctions against Saadia are deemed admitted, and clearly state valid claims warranting the award of the relief under the First Amended Complaint and establish Saadia's liability for sanctions. Third, Plaintiffs would suffer extreme prejudice if this Motion is denied as they have no other means of recovering relief for the loss and harm caused by Saadia's unlawful conduct, nor any means of permanently enjoining Saadia's rampant infringement and other unlawful conduct.

As such and for the further reasons stated herein, the Court should grant the default judgment sought by Plaintiffs pursuant to this Motion.

## FACTUAL BACKGROUND

## I.    SAADIA BREACHES THE PARTIES' LICENSE AGREEMENT

The Court is familiar with the relevant factual background, which Plaintiffs summarize for convenience. On June 1, 2021, Licensor and Saadia entered into an agreement, pursuant to which Saadia was granted a license to use the name, image, likeness, and biography of internationally renowned actress, activist, and author Gabrielle Monique Union-Wade ("Ms. Union"), as well as the GABRIELLE UNION trademark ("Ms. Union's Mark") to enable it to manufacture, distribute and sell a line of clothing and accessories (the "Collection

Merchandise").  (ECF No. 11 ¶¶ 18-24; *see also* ECF No. 19-1 ("Agreement") §§ 2(a), 2(b).)[1] The parties contemplated sales of Collection Merchandise through Saadia's online storefronts New York & Company, Fashion to Figure, and Lord & Taylor, among others.  (Agreement §§ 2(a), 2(b).)    In exchange, Saadia agreed to pay Licensor substantial endorsement compensation and guaranteed royalties.  (*Id.* §§ 4, 8.)

Saadia failed to make the required endorsement compensation, guaranteed royalty and other payments under Sections 4 and 8 of the Agreement.  On February 9, 2023, Licensor sent written notice advising Saadia that it was in material breach of the Agreement, and that unless such breaches were cured within 15 business days, Licensor would be entitled to terminate the Agreement.  (ECF No. 19-2.)

On March 7, 2023, given that Saadia failed to cure its defaults or otherwise respond to the February 9 letter, Licensor terminated the Agreement, demanded that Saadia pay the outstanding amounts under the Agreement, as well as interest at the lesser rate of 12% per annum or the maximum rate allowed by law on the outstanding payments from their original due dates until paid pursuant to Section 8(e) of the Agreement, and further demanded that Saadia immediately cease sales of Collection Merchandise.  (ECF No. 19-3.)

## II.     LICENSOR FILES SUIT AGAINST SAADIA AND OBTAINS A PRELIMINARY INJUNCTION

Saadia failed to cease sales of Collection Merchandise or make the payments owed, and Licensor consequently commenced this action on March 20, 2023.  (ECF No. 1.)  On April 6, 2023, Licensor and Husker filed a First Amended Complaint (ECF No. 11), adding claims by Husker against Saadia for trademark infringement based upon Saadia's continued sales of Collection Merchandise following termination of the Agreement.  On April 17, 2023, Plaintiffs

---

[1] The Agreement is annexed as Exhibit A to the Declaration of Matthew S. Barkan, dated April 17, 2023. (*See* ECF No. 19-1.)

moved for a temporary restraining order and preliminary injunction to stop Saadia's illicit sales. (ECF No. 17.)  On April 21, 2023, the Court entered a temporary restraining order enjoining Saadia from the continued sale of Collection Merchandise and other use of Ms. Union's name and Mark, including on any of Saadia's websites (ECF No. 31) (the "TRO").  The Court converted the TRO into a Preliminary Injunction on May 26, 2023, after full briefing, the submission of affidavits, and hearing argument from the parties.  (ECF No. 52.)[2]

The Preliminary Injunction prohibits sale of items that were previously Collection Merchandise "*if, and only if, Defendant first removes*" *Ms. Union's Mark from such items*. (*Id.* at 2 (emphasis added).)  In particular, Saadia was required to "fully remove[]" any "sewn-in labels and tags, hang tags, other labels or tags" bearing Ms. Union's mark prior to such sales. (*Id.*)[3]

## III.  SAADIA CONTINUES TO SELL MERCHANDISE WITH MS. UNION'S NAME AND MARK IN VIOLATION OF THE PRELIMINARY INJUNCTION

Saadia willfully thumbed its nose at the Preliminary Injunction by, amongst other egregious conduct detailed in Plaintiffs' previous filings (*see* ECF No. 65), continuing sales of Collection Merchandise *with sewn-in GABRIELLE UNION tags* and continuing its use of Ms. Union's name and Mark.  This prompted Plaintiffs to file the Motion for Sanctions.  (ECF Nos. 62-67, 74-75.)

---

[2] In granting Plaintiffs' motion for a preliminary injunction, the Court extended the TRO's restraints. Accordingly, citations to the wording of the Preliminary Injunction are to the TRO. (*See* ECF No. 52 at 13 (granting preliminary injunction and ordering that "[t]he restraints set forth in the Temporary Restraining Order, ECF No. 31, shall remain in place through the pendency of this litigation.").)

[3] Saadia is unquestionably subject to the TRO and Preliminary Injunction.  Those orders restrain Saadia as well as its "subsidiaries, partners, members, affiliates, officers, agents, servants, attorneys, employees, and those in active concert or participation with them" from "any further use of Plaintiffs' intellectual property, including in whole or in part the trademark 'GABRIELLE UNION,' or any other mark, word, name or symbol confusingly similar to the GABRIELLLE UNION mark which is likely to cause confusion, mistake or to deceive in connection with any merchandise, goods, or services[.]"  (ECF No. 31 at 1.)

## IV.  **LICENSOR'S DAMAGES**

### A.  **Nonpayment of Guaranteed Royalties**

Section 8(a)(ii) of the Agreement provides that "[i]n the event of termination of this Agreement due to non-payment of Guaranteed Royalties by Licensee, the entire unpaid amount of the Guaranteed Royalty payable during the 12-month period following the date of such termination will be due and payable to Licensor on the date of such termination."  This amount reflects a reasonable measure of the anticipated harm to Husker in the event of Saadia's breach, as damages resulting from a breach were impossible to measure at the time of contracting. (Union-Wade Decl. ¶ 23.)   For that reason, the parties (both of whom were sophisticated parties represented by counsel during the negotiation of the Agreement) agreed to the damages provision.  *Id.*

Saadia failed to make Guaranteed Royalty payments in breach of the Agreement.  (ECF No. 11 ¶ 65; Union-Wade Decl. ¶ 25.)  Saadia is required to pay the entire amount of Guaranteed Royalty payments for the 12-month period following the date of the termination on March 7, 2023 (*i.e.*, from March 7, 2023 to March 7, 2024), in addition to the past due Guaranteed Royalty amounts.  (ECF No. 19-1, Section 8(a)(ii).)

Past due Guaranteed Royalty amounts up until the Agreement was terminated on March 7, 2023 are $625,000.  (Union-Wade Decl. ¶ 27.)   Guaranteed Royalty payments for the following 12-month period, from March 7, 2023 to March 7, 2024, are $1,062,500.  (Union-Wade Decl. ¶ 28.)   Therefore, Licensor is entitled to $1,687,500 in damages for unpaid Guaranteed Royalty payments, plus applicable interest.  (Union-Wade Decl. ¶ 29.)[4]

---

[4] Saadia never provided sales numbers to Licensor, so Licensor has been unable to calculate its losses in the form of royalties owed under the Agreement, beyond the Guaranteed Royalties.  As such, in the event that Saadia's default is set aside by this Court, or that Plaintiffs' Motion for Default Judgment is denied, Plaintiffs' reserve all rights and waive none with respect to seeking damages in the form of other royalties

### B.  <u>Nonpayment of Endorsement Compensation</u>

Under Section 8(a)(i) of the Agreement, Licensor is entitled to "Endorsement Compensation" as set forth therein.  Under Section 8(a)(i)(A)(1) of the Agreement, Licensor is entitled to $750,000 for the First Contract Year ending on November 30, 2022.  Saadia failed to pay Licensor $187,500 of the $750,000 due for the First Contract Year ending on November 30, 2022.  (ECF No. 11 ¶¶ 70-72.)

Under Section 8(a)(i)(A)(2) of the Agreement, Licensor is further entitled to $1,000,000 for the Second Contract Year period from December 1, 2022 to November 30, 2023.  Saadia failed to pay Licensor any part of the $1,000,000 for the Second Contract Year ending on November 30, 2023.  (ECF No. 11 ¶¶ 70-72.)  As the Agreement was terminated on March 7, 2023, Licensor is entitled to the pro rata portion of the $1,000,000 for the 96 days between December 1, 2022 and March 7, 2023, *i.e.*, $263,013.70.  (Union-Wade Decl. ¶¶ 35-36.)

Therefore, Licensor is entitled to a total of $450,513.70 in damages for unpaid Endorsement Compensation payments, plus applicable interest.  Section 8(e) of the Agreement provides for the lesser of 12% per annum interest for all late payments under the Agreement, or the maximum rate allowed by law, computed from the original due date until paid.[5]

### C.  <u>Other Failed Payments Warranting Specific Performance</u>

Under the Agreement, Saadia agreed to hire and pay a number of third-parties, including Personnel (as defined in the Agreement) to perform hair stylist, make-up artist, and manicurist services in connection with work contemplated in the Agreement (*see* Section 4(j)), Licensor's Creative Consultant (as defined in the Agreement) (*see* Section 4(k)), and Licensor's social

---

and payments owed under the Agreement, including without limitation, under Sections 8(a)(ii) and 8(c) of the Agreement.  (Union-Wade Decl., n. 1.)

[5] Under New York law, the contract rate of 12%, rather than the statutory rate, governs the rate of interest. *NML Cap. v. Republic of Argentina*, 17 N.Y.3d 250, 928 N.Y.S.2d 666 (2011); *Trans-Pro Logistic v. Coby*, No. 05 CV 1759 (CLP), 2012 WL 526764, at *14 (E.D.N.Y. Feb. 16, 2012).

media team for its work providing certain social media services set forth in the Agreement (*see* Section 4(s)).  (Union-Wade Decl. ¶¶ 40-42.)  Saadia failed to make these payments.  (*Id*. ¶ 41.) The aggregate total outstanding amount due to the Personnel, the Creative Consultant and to Licensor's social media team is $57,150, for which specific performance is warranted.  (*Id*. ¶ 42, Ex. A.)

## V.    SAADIA'S FAILURE TO OBTAIN COUNSEL MERITS DEFAULT JUDGMENT

On May 3, 2024, Saadia's former counsel filed a Motion to Withdraw, despite Plaintiffs' pending Motions to Dismiss Counterclaims and Strike Affirmative Defenses (*see* ECF Nos. 54-55, 61) and Motion for Sanctions (*see* ECF Nos. 62-67, 74-75).  Counsel for Plaintiffs then filed a letter to this Court requesting that, to avoid delay and additional prejudice to Plaintiffs and Ms. Union, the Court order Saadia to obtain new counsel no later than May 31, 2024.  (ECF No. 78.)

On May 9, 2024, this Court granted Saadia's former counsel's Motion and ordered that "by June 12, 2024, new counsel for Saadia Group shall enter an appearance in this matter. If Saadia Group has not appeared by counsel by that date, then Saadia Group will be in default and may be subject to a default judgment against it."  (ECF No. 79 (emphasis added).)  Saadia's former counsel has since filed an Affidavit of Service of the Motion to Withdraw and the Court's May 9 Order, affirming that Saadia has actual notice of the same.  (ECF No. 80.)  Despite the Court's May 9 Order, and despite having well over two months to obtain new counsel, Saadia still has not done so.

## ARGUMENT

## I.    LEGAL STANDARDS

"[A] corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*."  *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) ("A limited liability company also may appear in federal court only through a licensed attorney."); *Jones v. Niagara*

*Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) (collecting cases and holding that "[t]he rule that a corporation may litigate only through a duly licensed attorney is venerable and widespread."); *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries … that a corporation may appear in the federal courts only through licensed counsel.").  Likewise, "a limited liability company also may appear in federal court only through a licensed attorney." *Lattanzio*, 481 F.3d at 140 (citation omitted).  Failure to appear through counsel renders a limited liability company liable for a default judgment against it.  *See Spin Master Ltd. v. Alvy*, 19 Civ. 3452 (LGS), Dkt. No. 100 (S.D.N.Y. Sept. 3, 2019) (alterations omitted) ("Where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55 [of the] Fed. R. Civ. P.") (quoting *Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006)).

Saadia's refusal to comply with a court order mandating it to appear by counsel, notwithstanding its filing of an answer by counsel who subsequently withdrew, constitutes a default for failure to "otherwise defend."  *See* Fed. R. Civ. P. 55(a); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) ("[A] district court is also empowered to enter a default against a defendant that has failed to ... 'otherwise defend.'"); *Christa Constr., LLC v. Connelly Drywall, LLC,* 879 F. Supp. 2d 389, 392 (W.D.N.Y. 2012) (due to corporate defendant's "failure to 'otherwise defend' by its refusal to obtain new counsel, the plaintiff's motion for default judgment [was] granted.") (citations omitted); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc*., 767 F. Supp. 2d 480, 486 (S.D.N.Y. 2011) (holding that because corporate defendant "Empire has failed to 'otherwise defend' the action … the Clerk should be directed to enter its default pursuant to Rule 55(a).").[6]

After a default is established, in determining whether to grant a default judgment, courts

---

[6] Here, the Clerk entered default against Saadia on June 14, 2024 (ECF No. 85).

consider: "(1) whether defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Inga v. Nesama Food Corp*., No. 20-CIV-0909 (ALC) (SLC), 2021 WL 3624666, at *5 (S.D.N.Y. July 30, 2021), *report and recommendation adopted*, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021) (citations omitted). Here, all three factors militate in favor of granting a default judgment.

## II.    DEFAULT JUDGMENT AGAINST SAADIA IS WARRANTED

As a threshold matter, Saadia is in default. Despite this Court's clear order (ECF No. 79), service of the same on Saadia (ECF No. 80), and Saadia's being given over a month to obtain new counsel, it has failed to do so. The law in this Circuit is equally clear that Saadia, as a limited liability company, cannot proceed *pro se*. Accordingly, because Saadia failed to secure legal counsel and file a notice of appearance within the prescribed time permitted by this Court, Defendant is in default for its failure to "otherwise defend" against this Action and is in default under FRCP 55(a).

Further, careful examination of the three relevant factors warrants default judgment being ordered against Saadia. ***First***, Saadia's conduct was clearly willful. As above, Saadia "failed to comply with the Court's Order to obtain new counsel and has had ample notice of the consequences of its noncompliance." *Arch Ins. Co. v. Sky Materials Corp*., No. 17 CV 2829 (CBA)(LB), 2021 WL 966110, at *4 (E.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 964948 (E.D.N.Y. Mar. 15, 2021); *First Tech. Cap., Inc. v. Airborne, Inc*., 378 F. Supp. 3d 212, 218 (W.D.N.Y. 2019) (finding that defendant's failure to appear by counsel after being ordered to do so "sufficiently establishes willfulness and favors granting Plaintiff's motion"). "Under the circumstances of this case, issuing further orders or imposing lesser sanctions [on Saadia] would serve no purpose, and would prejudice the Plaintiffs." *Arch Ins.*

*Co.*, 2021 WL 966110, at *4 (citations omitted).

**Second**, by defaulting, Saadia conceded it has no meritorious defense. All of the well-pleaded allegations and arguments in the First Amended Complaint, Plaintiffs' Motion to Dismiss Counterclaims and Strike Affirmative Defenses, and Plaintiffs' Motion for Sanctions against Saadia are "deemed admitted." *See, e.g., Kingvision Pay-Per-View, Ltd. v. Legendary Rest. 2000, Inc.*, No. 01 CIV. 5517 (HBP), 2003 WL 1878244, at *1 (S.D.N.Y. Apr. 11, 2003) (citations omitted); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendants'] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor."); *Lopez v. Emerald Staffing, Inc.*, No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *1 n.1 (S.D.N.Y. Feb. 26, 2020) (same).

Nor do Saadia's previous pleadings constitute meritorious defenses following its default. "[T]he existence and viability of Defendant's previously-asserted . . . defense[s] does not preclude entry of default judgment. Indeed, by defaulting Defendant abandons its assertion of . . . any . . . defense . . . to Plaintiff's claims." *First Tech. Cap.*, 378 F. Supp. 3d at 219 (citations omitted); *see also Integrity Commc'ns Corp. v. Baker*, No. 10 CIV. 3238, 2012 WL 1309153, at *2 (S.D.N.Y. Mar. 26, 2012) ("[A]lthough [Defendant] has presented some possibly meritorious defenses to the claims alleged in [Plaintiff's] Complaint, these do not outweigh the other factors favoring default."), *report and recommendation adopted*, 2012 WL 1309136 (S.D.N.Y. Apr. 16, 2012); *Xerox Corp. v. Graphic Mgmt. Servs., Inc.*, No. 11-CV-6397, 2014 WL 3894381, at *5 (W.D.N.Y. Aug. 8, 2014) ("Defendants who refuse to appear and defend against the claims made against them can not [sic] be allowed to benefit from their actions.") (*citing Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996) ("[W]here the conduct of a party amounts to willful misconduct, the existence of a meritorious defense does not prohibit default judgment.")).

**Third**, Plaintiffs will be severely prejudiced if they are not granted default judgment because they have no other means of recovering relief for the loss and harm caused by Saadia's unlawful conduct, nor any means of permanently enjoining Saadia's rampant infringement and other unlawful conduct. *See Arch Ins. Co.*, 2021 WL 966110, at *6 (citations omitted); *Inga*, 2021 WL 3624666, at *6 (holding that plaintiff "will be prejudiced in the absence of a default judgment, not only by the delay in resolving this action, but by his inability to recover from another source for the … losses he sustained") (citations omitted); *Jeepster Recordings Ltd. v. World's Fair Label Grp., Inc.*, No. 09 CIV 2155 (RLE), 2010 WL 653476, at *2 (S.D.N.Y. Feb. 22, 2010) (holding that "a denial of default judgment would prejudice [Plaintiff] because it has actively pursued its claims to recover monies under its agreement").

Plaintiffs therefore clearly establish the three factors warranting default judgment being ordered against Saadia. The only remaining question is whether Plaintiffs have stated facially valid claims for relief in the First Amended Complaint. *See, e.g., First Tech. Cap.*, 378 F. Supp. 3d at 219. Plaintiffs more than adequately pleaded all of their claims.

### A. Default Judgment Should Be Granted on Plaintiff's First Cause of Action (Breach of Contract – Guaranteed Royalties)

Under New York law, to recover for a breach of contract, a plaintiff must establish "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 53 (2d Cir. 2011); *K2M Design, Inc. v. Schmidt*, No. 1:22-CV-03069 (MKV), 2024 WL 1313392, at *7 (S.D.N.Y. Mar. 26, 2024).

Licensor and Saadia entered into a legally binding and enforceable contract, the Agreement, on June 1, 2021. (ECF No. 11 (FAC), ¶ 60.) Licensor has fully complied with all of

its obligations under the Agreement. (*Id.*, ¶ 61.) Pursuant to Section 8(a)(ii) of the Agreement, Saadia was required to make certain Guaranteed Royalty payments to Licensor, but Saadia failed to do so. (*Id.*, ¶¶ 62, 63; ECF No. 19-1 at § 8(a)(ii).) By failing to make the required Guaranteed Royalty payments, Saadia materially breached the Agreement and injured Licensor. (ECF No. 11, ¶ 64.) Because Saadia has failed to make Guaranteed Royalty payments in breach of the Agreement, Saadia is required to pay the entire amount of Guaranteed Royalty payments for the period of twelve months following the date of the termination (*i.e.*, $1,062,500), in addition to the past due Guaranteed Royalty amounts (*i.e.,* $625,000). (*Id.*, ¶ 65; ECF No. 19-1 at § 8(a)(ii); Union-Wade Decl., ¶¶ 27-28.) By reason of the foregoing, Saadia is liable to Licensor for $1,687,500 in damages, plus applicable interest. (ECF No. 11, ¶ 66; ECF No. 19-1 at §§ 8(a)(ii), 8(e); Union-Wade Decl. ¶ 29.)

### B. Default Judgment Should Be Granted on Plaintiff's Second Cause of Action (Breach of Contract – Endorsement Compensation)

As noted above, Licensor and Saadia entered into a legally binding and enforceable contract, the Agreement, on June 1, 2021. (ECF No. 11, ¶ 68.) Licensor has fully complied with all of its obligations under the Agreement. (*Id.*, ¶ 69.) Pursuant to Section 8(a)(i) of the Agreement, Saadia was required to make certain Endorsement Compensation payments to Licensor, but Saadia failed to do so. (*Id.*, ¶¶ 70, 71; ECF No. 19-1 at § 8(a)(i).) By failing to make the required Endorsement Compensation payments (totaling $450,513.70 (*see supra* at IV(B))), Saadia materially breached the Agreement, thus injuring Licensor. (ECF No. 11, ¶ 72.) By reason of the foregoing, Saadia is liable to Licensor for $450,513.70 in damages, plus applicable interest.

### C. Default Judgment Should Be Granted on Plaintiff's Third Cause of Action (Breach of Contract – Other Failed Payments)

As noted above, Licensor and Saadia entered into a legally binding and enforceable

contract, the Agreement, on June 1, 2021. (*Id.*, ¶ 75.) Licensor has fully complied with all of its obligations under the Agreement. (*Id.*, ¶ 76.) Pursuant to Section 4(j) of the Agreement, Saadia agreed to hire and pay the Personnel[7] to perform hair stylist, make-up artist, and manicurist services in connection with work contemplated in the Agreement. (*Id.*, ¶ 78; ECF No. 19-1 at § 4(j).) Further, pursuant to Section 4(k) of the Agreement, Saadia promised to hire and directly pay Licensor's Creative Consultant in connection with services to be provided under the Agreement. (ECF No. 11, ¶ 79; ECF No. 19-1 at § 4(k).) Further still, pursuant to Section 4(s) of the Agreement, Saadia agreed to pay Licensor's social media team for its work providing certain social media services set forth in the Agreement. (ECF No. 11, ¶ 80; ECF No. 19-1 at § 4(s).)

Saadia failed to pay invoices from the Personnel for their work in connection with the Agreement and failed to make certain payments to the Creative Consultant under the Agreement. (ECF No. 11, ¶¶ 81, 82; Union-Wade Decl. at ¶¶ 38-42.) Saadia additionally failed to make the required quarterly $7,500 payment to Licensor's social media team for each of the Contract Quarters ending on May 31, 2022, August 31, 2022, and November 30, 2022, totaling $22,500. (ECF No. 11, ¶ 83; Union-Wade Decl. at ¶ 41; ECF No. 19-1 at § 4(s)(v).) The aggregate total outstanding amount due to the Personnel, the Creative Consultant and to Licensor's social media team is $57,150. (ECF No. 11, ¶ 84; Union-Wade Decl. at ¶ 42, Ex. A.)

Saadia breached its obligation to Licensor to pay these third-parties for their services and has no justification to avoid performance of its obligation under Section 4 of the Agreement to pay these third parties for their services. (ECF No. 11, ¶¶ 85, 86.) It is within Saadia's power to perform its obligation to pay the third parties for their services under the Agreement, but Saadia has voluntarily chosen not to do so. (*Id.* ¶ 87.)

Licensor has no remedy at law for Saadia's failure to pay the third parties as required

---

[7] As defined in the Agreement at Section 4(j).

under the Agreement and therefore, Saadia should be directed by an order of specific performance to pay the outstanding amounts due and owing to the Personnel, the Creative Consultant, and Licensor's social media team.  *See Deutsche Bank Nat'l Tr. Co. for Morgan Stanley Structured Tr. I 2007-1 v. Morgan Stanley Mortg. Cap. Holdings LLC*, 289 F. Supp. 3d 484, 501 (S.D.N.Y. 2018) (citations omitted) (noting specific performance may be awarded "when it is specifically called for in the contract" but permitting plaintiff to seek damages in lieu of specific performance where it was "impossible or impracticable").  (*See* ECF No. 11, ¶¶ 88, 89; Union-Wade Decl., ¶ 42.)

### D.  Default Judgment Should Be Granted on Plaintiff's Fourth and Fifth Causes of Action (Federal Trademark Infringement – 15 U.S.C. § 1114 & 1125(a))

To prove trademark infringement, a plaintiff must prove: (1) that its mark is entitled to protection; and (2) that "defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods."  *Knowles-Carter v. Feyonce, Inc.*, 347 F. Supp. 3d 217, 224 (S.D.N.Y. 2018).[8]

Husker is the owner of Ms. Union's Mark, *i.e.,* the federally registered trademark for GABRIELLE UNION, Reg. Nos. 6,080,359, and 6,713,926 in connection with apparel, accessories and related goods.  (*Id.*, ¶ 90; ECF 11-1 (trademark registration certificates).) Saadia's continued and unlawful use of Ms. Union's Mark is causing and is likely to cause consumer confusion as to the origin, sponsorship, or approval of Defendant's goods — particularly, Saadia's ongoing infringement of Ms. Union's Mark is causing and will continue to cause consumers to mistakenly believe that there is an affiliation, connection, approval, sponsorship or association of Ms. Union and her entity's goods, services and commercial

---

[8] The elements of trademark infringement are the same under 15 U.S.C. §1114 (for infringement of a registered mark) and §1125(a) (for infringement of common law rights).  *See Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 146 (2d Cir. 2003)*; Knowles-Carter*, 347 F. Supp. 3d at 224, 227.

activities, on the one hand, with Saadia and/or its respective goods, services or commercial activities, on the other hand. (ECF No. 11, ¶ 91.)

Because Saadia materially breached the Agreement, resulting in the termination of its license, Saadia's continued unauthorized use of Ms. Union's Mark constitutes willful infringement. *See Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005) (holding that willful infringement is established where defendant was aware of the infringing activity, or that defendant's actions were the result of reckless disregard or willful blindness). (ECF No. 11, ¶ 92.) Husker is therefore entitled to Saadia's profits resulting from its trademark infringement, any actual damages Husker sustained, as well as attorneys' fees and costs pursuant to 15 U.S.C. § 1117. (ECF No. 11, ¶ 92.)[9]

### 1. Permanent Injunctive Relief Is Warranted

Husker is also entitled to permanent injunctive relief enjoining Saadia from all unauthorized use of Ms. Union's Mark and name in the United States, including continued sale of Collection Merchandise. (*Id.,* ¶ 94; 15 U.S.C. § 1116.) To obtain such relief, Husker must plead that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 296 (2d Cir. 2014).

First, in addition to the statutory presumption of irreparable harm (*Hermès Int'l v. Rothschild*, 678 F. Supp. 3d 475, 488 (S.D.N.Y. 2023) (citations omitted)), as a direct and

---

[9] Plaintiffs are unable to quantify Saadia's sales of infringing goods because Saadia failed to produce such information in this litigation and has now defaulted. Husker therefore seeks only a permanent injunction (as detailed herein) and its attorneys' fees and costs in connection with this litigation as damages for this cause of action. However, in the event that Saadia appears and the litigation continues, Husker reserves its rights to adduce additional fact and expert discovery on its damages for Saadia's trademark infringement. (Rose Decl. ¶ 22; Union-Wade Decl. ¶ 57.)

proximate result of Saadia's wrongful acts, Husker has suffered and continues to suffer irreparable damage to its trademark rights, business reputation, and goodwill. (*Id*. ¶ 95; Union-Wade Decl., ¶ 19.) Husker is and will be irreparably harmed absent an injunction because (a) Husker and Ms. Union are suffering loss of control of, and resultant damage to, their brand and Ms. Union's Mark, and (b) Saadia is not only continuing unauthorized sales of GABRIELLE UNION-branded merchandise, but doing so at a deep discount in violation of Husker's trademark rights. (ECF No. 11, ¶ 96; Union-Wade Decl., ¶ 21.)

Second, Husker has no adequate remedy at law and is entitled to an injunction restraining Saadia, its respective officers, agents, and employees, and all persons acting in concert with Saadia, from engaging in further acts of infringement. (ECF No. 11, ¶ 97.)

Third, the balance of hardships favors the granting of an injunction. (*Id*., ¶ 98.) The hardship to Husker absent the grant of the injunction is monumental, as Saadia will continue to impair the value of Ms. Union's Mark and brand. (*Id*.) On the other hand, the grant of an injunction barring Saadia from continuing to offer Collection Merchandise for sale or from otherwise using Ms. Union's Mark will do no more than require Saadia to abide by the terms of the parties' Agreement. (*Id*.)

Fourth, the public interest would be served by the injunction because the public has a compelling interest in the protection of trademarks and in the avoidance of customer confusion posed by the unlicensed use of Ms. Union's Mark. *See Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co*., 647 F. Supp. 3d 145, 270 (S.D.N.Y. 2022) ("The public has an interest in not being deceived and 'in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.'") (citations omitted); *Juicy Couture, Inc. v. Bella Int'l Ltd*., 930 F. Supp. 2d 489, 505 (S.D.N.Y. 2013) ("The Second Circuit has long held that there is a 'strong interest in preventing public confusion.'") (citation omitted); ECF No. 11 ¶ 99.

### 2.  An Award of Attorneys' Fees and Costs Is Warranted

Finally, Plaintiffs are also entitled to recovery of their attorneys' fees and costs pursuant to 15 U.S.C. § 1117, which provides that a plaintiff may recover the costs of the action, and that a court may award reasonable attorneys' fees to the prevailing party in exceptional cases.  *See Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC*, 553 F. Supp. 2d 201, 210 (E.D.N.Y. 2008) ("Courts generally award costs to prevailing parties in cases involving violations of the Lanham Act."); *Cap. One Fin. Corp. v. Cap. One Certified Inc*., No. 18-cv-580-ARR-RML, 2019 WL 1299266, at *8 (E.D.N.Y. Mar. 5, 2019) (same), *report and recommendation adopted*, 2019 WL 1299661 (E.D.N.Y. Mar. 21, 2019).

"District courts have wide latitude to determine whether a case is exceptional [to merit an award of attorneys' fees]; the inquiry is a case-by-case exercise that considers the totality of the circumstances." *Antetokounmpo v. Constantino*, No. 21-cv-2198-JMF-JLC, 2021 WL 5916512, at *7 (S.D.N.Y. Dec. 15, 2021) (quoting *Octane Fitness, LLC v. ICON Health & Fitness*, 572 U.S. 545, 554 (2014)), *report and recommendation adopted*, 2022 WL 36232 (S.D.N.Y. Jan. 4, 2022).   Courts also consider factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *4 Pillar Dynasty LLC v. New York & Co., Inc*., 933 F.3d 202, 215 (2d Cir. 2019).

Here, Saadia's legal position is utterly meritless, as it materially breached the parties' License Agreement by failing to pay endorsement compensation and guaranteed minimum royalties, then indefensibly proceeded to continue to sell merchandise bearing Ms. Union's Mark following the termination of the Agreement.  It then flagrantly defied the preliminary injunction issued by this Court ordering it to cease its infringing conduct, driving up the costs of the action by constraining Plaintiffs to file a motion for sanctions, all for nought, as Saadia proceeded to

willfully defy yet *another* Court order by defaulting in the action and failing to retain counsel by the Court-ordered deadline of June 12, 2024. In light of the foregoing, there is no question that this is an exceptional case that merits an award of attorneys' fees. *See Antetokounmpo*, 2021 WL 5916512, at *7 (granting attorneys' fees in trademark case on default, noting that courts in this Circuit have found cases to be "exceptional" where defendants violated court orders and "continued to sell their infringing merchandise throughout [the] litigation, all with the intent to deceive and profit and the expense of the administration of justice," as is the case here); *Experience Hendrix, LLC v. Pitsicalis*, No. 17-cv-1927-PAE-GWG, 2020 WL 3564485, at *15 (S.D.N.Y. July 1, 2020) *report and recommendation adopted*, 2020 WL 4261818 (S.D.N.Y. July 24, 2020) (finding case to be exceptional where defendant violated multiple court orders and ultimately defaulted, as is the case here).

Attorneys' fees are particularly appropriate here for the sake of compensation and deterrence because – as in *Antetokounmpo* – "[Saadia's] default has left [Plaintiffs] unable to prove . . . damages with adequate specificity, leaving an attorneys' fees award as the only vehicle to compensate [them] and deter [Saadia] and others from engaging in infringing conduct." *Antetokounmpo*, 2021 WL 5916512, at *8; *see also Streamlight, Inc. v. Gindi*, No. 18-cv-987 (NG) (RLM), 2019 WL 6733022, at *17 (E.D.N.Y. Oct. 1, 2019), *report and recommendation adopted*, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019) (granting attorneys' fees award where plaintiff "could not obtain . . . discovery related to damages," and noting that "[b]oth before and after *Octane Fitness*, courts in the Second Circuit have regularly awarded attorneys' fees against defaulting defendants").

18

### E.  Default Judgment Should Be Granted on Plaintiff's Sixth Cause of Action (Permanent Injunction)

As above, Plaintiffs must demonstrate that: (1) they have suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiffs and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *SEC v. Citigroup Glob. Mkts., Inc*., 752 F.3d 285, 296 (2d Cir. 2014); *Philip Morris USA Inc. v. A & V Minimarket, Inc.,* 592 F. Supp. 2d 669, 676 (S.D.N.Y.), *judgment entered*, 592 F. Supp. 2d 677 (S.D.N.Y. 2009) (ordering permanent injunction against defaulting defendants under Lanham Act).

For substantially the same reasons to those stated above with respect to the Fifth Cause of Action, Husker and Licensor will be irreparably harmed absent an injunction (ECF No. 11 ¶ 116),  have no adequate remedy at law (*id.* ¶ 117), the balance of hardships favors the granting of an injunction (*id*. ¶ 118) and the public interest would be served by the injunction.

As such, Plaintiffs' factual allegations, accepted as true, state all of the above claims in the First Amended Complaint (ECF No. 11) against Saadia and default judgment should be granted with respect to all of the same.

### F.  Saadia's Counterclaims and Affirmative Defenses Should Be Stricken

As for Plaintiffs' Motion to Dismiss Counterclaims and Strike Affirmative Defenses (*see* ECF Nos. 54-55, 61), Second Circuit law is clear that where a corporate defendant has been ordered to retain counsel and fails to do so, striking that defendant's answer, including its counterclaims, is the appropriate sanction.  *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1306 (2d Cir. 1991) (affirming the district court's entry of default judgment and dismissal of cross- and counter-claims asserted by a corporate defendant without counsel); *Hounddog Prods.,*

*L.L.C. v. Empire Film Grp., Inc*., 767 F. Supp. 2d 480, 481 (S.D.N.Y. Mar. 2, 2011) (striking corporate defendant's answer and granting a default judgment where the corporate defendant failed to appear through new counsel); *Berdini v. Nova Sec. Grp*., No. 13-CV-5672, 2015 WL 5540735, at *11-13 (E.D.N.Y Sept. 2, 2015), *report and recommendation adopted,* 2015 WL 5541233 (E.D.N.Y Sept. 18, 2015) (same); *Northfield Ins. Co. v. Mannara Contracting Corp*., No. 18-CV-6447, 2019 WL 5874063, at *1 (E.D.N.Y. Aug. 22, 2019), *report and recommendation adopted*, 2019 WL 4291652 (E.D.N.Y. Sept. 11, 2019) (same).

## III.  PLAINTIFFS HAVE SHOWN THE AMOUNT OF DAMAGES, ATTORNEYS' FEES AND COSTS TO BE AWARDED WITH REASONABLE CERTAINTY

The only matter left for the Court is to order the amount of damages, attorneys' fees and costs to be awarded to Plaintiffs.  Plaintiffs have established the basis for damages, attorneys' fees and costs with the required "reasonable certainty."  *Jeepster Recordings Ltd.*, 2010 WL 653476, at *3 ("The District Court . . . may make a determination without a hearing, 'as long as it [has] ensured that there is a basis for the damages specified in the default judgment.'"); *Med. Econ. Co. v. Healthexchange, Inc*., No. 01 CIV.11262 KMW AJP, 2003 WL 22346391, at *2 (S.D.N.Y. Oct. 15, 2003) ("Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, as long as the Court has ensured that there was a basis for the damages specified in the default judgment.") (cleaned up and citations omitted); *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012).

Plaintiffs submitted, in support of this Motion, the detailed Declaration of Gabrielle Union-Wade dated August 1, 2024 ("Union-Wade Declaration"), the detailed Declaration of Brad D. Rose dated August 5, 2024 ("Rose Declaration"), and supporting documentary evidence to determine those amounts with reasonable certainty.  *Action S.A. v. Marc Rich & Co*., 951 F.2d 504, 508 (2d Cir. 1991), *cert. denied*, 503 U.S. 1006 (1992).  Plaintiffs are entitled to all

reasonable inferences in its favor based upon the evidence submitted. *HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 717 (S.D.N.Y. 2018), as amended (June 18, 2018) (citations omitted).

### A. __Damages__

Breach of contract damages "determined by calculating the 'amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract.'" *Jeepster Recordings Ltd.*, 2010 WL 653476, at *3; *Asesoral Bus. Partners, LLC v. Seatech Worldwide Corp.*, No. 19-CIV-11512(AJN)(SLC), 2021 WL 6755016, at *5 (S.D.N.Y. Dec. 16, 2021), *report and recommendation adopted*, 2022 WL 1265945 (S.D.N.Y. Apr. 28, 2022). For their breach of contract claims, Plaintiffs are "entitled to prejudgment interest as a matter of right." *Asesoral Bus. Partners*, 2021 WL 6755016, at *5 (citations omitted). Further, Plaintiffs are entitled to post-judgment interest under 28 U.S.C. § 1961. *Id.* (citations omitted).

As set out above (*see supra*, Factual Background, Section IV (Licensor's Damages)) and in the Union-Wade Declaration, under Section 8(a)(ii) of the Agreement, Licensor is entitled to $1,687,500 in damages for unpaid Guaranteed Royalty payments, plus applicable interest.[10] (Union-Wade Decl. ¶ 29.) Further, under Section 8(a)(i) of the Agreement, Licensor is entitled to a total of $450,513.70 in damages for unpaid Endorsement Compensation payments, plus applicable interest. (Union-Wade Decl. ¶ 37.)

Saadia made three unannounced and unexplained payments to Licensor from 2021 to 2023 which were simply specified as "NY & Co Settlement" (even though there were no

---

[10] Plaintiffs note that Saadia has never, at any point during this litigation or prior to it, alleged that the damages to which Licensor is entitled under Section 8(a)(ii) of the Agreement are inappropriate or unenforceable. That is because such damages are proper and enforceable. The sophisticated parties freely agreed to them at the time of contracting with the benefit of counsel, they are proportionate to the loss and harm suffered by Licensor because of Saadia's egregious, material breaches, and they are reasonable given that Plaintiffs' damages resulting from Saadia's breaches are extremely difficult to precisely estimate. *See, e.g., L & L Wings, Inc. v. Marco-Destin Inc.*, 756 F. Supp. 2d 359 (S.D.N.Y. 2010); *Rattigan v. Commodore Int'l Ltd.*, 739 F. Supp. 167 (S.D.N.Y. 1990).

settlement discussions or settlement reached) and not supported by any correspondence from Saadia. The first was on May 13, 2021 in the amount of $132,006.40. The third was on May 1, 2023 in the amount of $202,905.29. The total of these three payments is $673,087.19.

The total amount of damages to which Licensor is entitled under the Agreement is $2,138,013.70. This total, minus the $673,087.19 in unannounced and unexplained payments made by Saadia to Licensor, equals a total of $1,464,926.51. Adding the 12% interest under Section 8(e) of the Agreement, Licensor is contractually entitled to damages totaling $1,640,717.69 with respect the First to Third Causes of Action, which are now deemed true and proven with reasonable certainty by the terms of the Agreement and the content of the Union-Wade Declaration. *See* Union-Wade Decl. ¶ 52.

### B. Attorneys' Fees and Costs

Plaintiffs are also entitled to their reasonable attorneys' fees and costs incurred under the Lanham Act. *See supra* at II(D)(2); ECF No. 11 ¶¶ 93, 104 (pleading the same). In the Second Circuit, courts evaluate attorneys' fees in two parts. First, determining the "reasonable hourly rate" for the attorney, and second, multiplying the hourly rate by the reasonable number of hours worked to calculate a "presumptively reasonable fee." *Rutledge v. Haru Inc*., No. 20-CV-7641 (AJN), 2021 WL 4429328, at *3 (S.D.N.Y. Sept. 27, 2021) (citations omitted). In evaluating an hourly rate, courts consider "market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'" and consider "all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (listing these variables) and other cases).

As set out in the Rose Declaration and Union-Wade Declaration, Plaintiffs have

expended $558,964.97 to date in attorneys' fees and costs (comprising $542,452.62 in attorneys' fees and $16,512.35 in costs) in prosecuting this Action, which they are entitled to recover. (Rose Decl. ¶¶ 18-20; Union-Wade Decl. ¶¶ 54-56.)

These fees and costs are reasonable measured against the benchmark of market rates as well as the work necessarily expended in this matter. Pryor Cashman is an elite mid-size, full service law firm and is consistently ranked as one of the best mid-size law firms in the country. (Rose Decl. ¶ 6.) Pryor Cashman has a market-leading intellectual property litigation practice and has successfully represented its clients in some of the biggest intellectual property litigations in recent times. (*Id*. ¶ 7.) Due to the vast collective experience and expertise of the attorneys comprising the intellectual property litigation practice, including the attorneys who worked on this case, the group and the attorneys therein are highly sought after by parties litigating disputes involving intellectual property and related issues. (*Id*. ¶ 8.)

Pryor Cashman sets its hourly billing rates by taking into consideration a variety of factors. (*Id*. ¶ 9.) Each year, the firm establishes for each attorney and paralegal an hourly billing rate that reflects the attorney's experience and expertise and also takes into consideration competitive market intelligence for similarly situated attorneys among law firms considered to be in Pryor Cashman's "peer group" (in terms of size of firm, clientele, and expertise) — including proprietary and well-recognized survey data issued by Wells Fargo, ALM, and PriceWaterhouseCoopers. (*Id*.)

The hourly billing rates for the Pryor Cashman attorneys who represented Plaintiffs in this Action are reasonable. Pryor Cashman's rates are lower than most comparable firms and given the skill, experience and reputation of the firm, its intellectual property litigation practice, as well as of the attorneys who predominantly worked on this case. (*See id.* ¶ 10.)

Further, considering the "case-specific variables," Pryor Cashman has appropriately

litigated this Action since its inception, and been faced with belligerent and wasteful defense tactics, which have significantly increased the time, fees and resources expended with respect to this firm's prosecution of this Action. (*Id*. ¶ 16.) Legal fees were charged for work ranging from preparation and filing of the pleadings in this Action, to the Motion to Dismiss the Counterclaims, the Motion for Sanctions and the present Motion for Default Judgment, all of which Pryor Cashman completed efficiently and to the highest legal standards. (*Id*. ¶ 18.)

As such, Plaintiffs should be awarded $558,964.97 in their reasonable attorneys' fees and costs expended in litigation of this matter.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court enter default judgment for Plaintiffs against Defendant, and make the following orders sought by Plaintiff in its Notice of Motion for Default Judgment (ECF No. 86):

- Saadia is in default with respect to the First Amended Complaint (ECF No. 11), Plaintiffs' Motion to Dismiss Counterclaims and Strike Affirmative Defenses (*see* ECF Nos. 54-55, 61) and Plaintiffs' Motion for Sanctions (*see* ECF Nos. 62-67, 74-75);

- As Saadia is in default, all allegations, claims and arguments presented in the First Amended Complaint (ECF No. 11), Plaintiffs' Motion to Dismiss Counterclaims and Strike Affirmative Defenses (*see* ECF Nos. 54-55, 61) and Plaintiffs' Motion for Sanctions (*see* ECF Nos. 62-67, 74-75) are deemed admitted by Saadia;

- With respect to the Fourth to Sixth Causes of Action in Plaintiffs' First Amended Complaint (*see* ECF No. 11), Plaintiffs are awarded specific performance (to pay the outstanding amounts due and owing to the Personnel, the Creative Consultant, and Licensor's social media team) and the permanent injunctive relief set forth therein.

24

(ECF No. 11 at pp. 20-21.);

- With respect to Plaintiffs' Motion to Dismiss Counterclaims and Strike Affirmative Defenses (*see* ECF Nos. 54-55, 61), (i) the Counterclaims in the Answer are dismissed in their entirety with prejudice pursuant to Rule 12(b)(6) and (ii) the Affirmative Defenses in the Answer are stricken with prejudice;

- With respect to Plaintiffs' Motion for Sanctions (*see* ECF Nos. 62-67, 74-75), (i) Saadia is in contempt of the temporary restraining order and/or the preliminary injunction ordered by this Court, (ii) Saadia is to pay the coercive fine set out in the Paragraph 2(a) of the Order to Show Cause, and (iii) Saadia is to perform the acts pleaded in Paragraphs 2(d) to 2(h) of the Order to Show Cause.  (ECF No. 66 at pp. 1-2.);

- Damages to be paid by Saadia to Plaintiffs under the Agreement and as pleaded in the Amended Complaint (ECF No. 11 ¶¶ 64-66, 71-73, 84-88), and as set out in the Union-Wade Declaration, in the total amount of $1,640,717.69 including 12% interest applicable under the Agreement;[11]

  - Attorneys' fees and costs to be paid by Saadia to Plaintiffs as pleaded in the Amended Complaint (ECF No. 11 ¶¶ 93, 104), and as set out in the Union-Wade Declaration and Rose Declaration, in the amount of $558,964.97; and

- Such other and further relief as this Court deems just and proper.

---

[11] As noted above in footnote 9, in the event that Saadia's default is set aside by this Court, or that Plaintiffs' Motion for Default Judgment is denied, Plaintiffs' reserve all rights and waive none with respect to the relief claimed in the Amended Complaint (ECF No. 11 at pp. 20-21) and the Order to Show Cause (ECF No. 66 at pp. 1-2), including without limitation for all available monetary relief under the Lanham Act as well as any further and associated attorneys' fees and costs incurred by Plaintiffs.  Rose Decl. ¶ 22; Union Wade Decl. ¶ 57.

Dated: New York, New York
      August 5, 2024

**PRYOR CASHMAN LLP**

By: _____
    Brad D. Rose, Esq.
    Matthew S. Barkan, Esq.
    Felicity Kohn, Esq.
    Daniel J. Pohlman, Esq.
    Nicholas Saady, Esq.
7 Times Square
New York, New York  10036-6569
(212) 421-4100

*Attorneys for Plaintiffs Flawless Style LLC*
*and FloridaHusker LLC*

26